William L. GREENE, Plaintiff,

v.

Charles E. WILSON et al., Defendants.

Civ. A. No. 3561–54.

United States District Court
District of Columbia.

March 29, 1957.

Carl Berueffy, Washington, D. C., for plaintiff.

Dept. of Justice, Asst. Atty. Gen., Geo. Cochran Doub, and Donald B. Mac Guineas, Beatrice M. Rosenhain, Leo A. Rover, U. S. Atty., Oliver Gasch, Principal Asst. U. S. Atty., Frank Strickler, and Catherine B. Kelly, Asst. U. S. Attys., Washington, D. C., for defendants.

McGUIRE, District Judge.

The plaintiff seeks a mandatory injunction and declaratory judgment directed towards the nullification of a communication dated April 17, 1953 by the then Assistant Secretary of the Navy to his employer, an engineering and research corporation with its principle place of business in Maryland, to the effect that his access to Navy classified security information was inconsistent with the best interests of national security.

First of all, it may be said: "It is a prerequisite to the maintenance of any action for specific relief that the plaintiff claim an invasion of his legal rights, either past or threatened." Larson v. Domestic & Foreign Corp., 337 U. S. 682, at page 693, 69 S.Ct. 1457, 1463, 93 L.Ed. 1628. In other words, he must allege conduct that is illegal and "If he does not, he has not stated a cause of action. This is true whether the conduct complained of is sovereign or individual." Id.

The factual picture briefly is this: The plaintiff, as had been indicated, was employed by the corporation referred to above and has been for some

years. He was its General Manager and Vice President in charge of engineering, and its main business presumably was Defense Department contracts which involved classified matter. As a condition to and as an integral part of such contracts, his employer agreed early in June of 1951 to, among other things, cooperate with the Government in reference to security controls and the Government, in turn, agreed upon written application by the contractor to specifically designate such of its employees who might have access to matter classified top secret or secret, or "in the case of contracts for furnishing or constructing aircraft, aircraft parts or aeronautical accessories, to have access to the plans or specifications or to the work under construction, or to participate in the contract trials, whether such aeronautical contracts are classified or not."

There was also published on or about the same time an Industrial Security Manual, so-called, designed specifically for the safeguarding of classified matter which the contractor agreed to adhere to in relation to security controls, and which Manual defined responsibility with regard to classified material on Government defense contracts. Paragraph 4(e) of the Manual stated:

"The contractor shall exclude (this does not imply the dismissal or separation of any employee) from any part of its plants, factories or sites at which work for any military department is being performed, any person or persons whom the Secretary of the military department concerned or his duly authorized representative, in the interest of security, may *designate* in writing." [Italics supplied.]

Both the contractual agreement and the Industrial Security Manual were in force during the critical time period of April 1953 when the communication in question was written and at all times relevant thereafter.

It might be said that the plaintiff originally had clearances for access to classified Department of Defense information and materials. These clearances, however, were revoked on December 5, 1951. This finding was reversed subsequently by the Industrial Employment Review Board and by letter dated January 29, 1952, the plaintiff's employer was so advised. However, in March of 1953 the Army-Navy-Air Force Personnel Security Board and the Industrial Employment Review Board were abolished and there was then established by the various Secretaries of the individual military establishments, jointly, what were designated as Regional and Industrial Personnel Security Boards, together with so-called Uniform Standards of Operation. It was at this time, upon the abolishment of the Industrial Employment Review Board, and immediately prior to the establishment of the new Boards, that the communication complained of was written in conformity to paragraph 4(e) referred to above.

The plaintiff's employer immediately complied with the request and by letter dated April 24 in that year advised that it had excluded the plaintiff from any part of its plant, factories and sites and barred him access to all security information. As a consequence, the services of plaintiff were dispensed with.

There is no need to follow the rather tortuous course of events that followed. Sufficient to say that upon request, the plaintiff was furnished with a detailed statement of the reasons which resulted in the revocation of his clearances and which had been previously made known to him by correspondence. None of this post factum activity in relation to the communication, no matter how viewed, fills in the fatal gap so plainly present in the plaintiff's claim. It is fundamental when one presumes to accept a contractual offer then that offer must be accepted in terms, and one of the terms here, as has been said, related to security controls. The necessity for such is obvious. If the plaintiff's employer did not see fit to accept and conform, it had perfect freedom not to enter into the contract. On acceptance of the offer in terms, it

was obliged in the circumstances to carry out its essentials, the presumed result of which was the loss by the plaintiff of his position. But this cannot be said in any degree to be the fault of the Government, for here, through properly constituted authority, it was exercising its right to protect itself against threats to its survival, and as far as the action of an individual was concerned, this action taken, even envisioning the result to the plaintiff, fails to set forth any invasion of his legal rights and, therefore, as has been said, there is no justiciable controversy and the Government's motion for summary judgment is granted.

Assuming arguendo he was entitled to hearing and review, he was accorded such and an examination of the extensive and repetitive record fails to show any violation of procedural due process. It should be noted also that the hearings held in the instant case apparently are exempted from the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., as hearings held "by regulation, rule, custom, or special dispensation; not * * * held by compulsion." Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616.

Order accordingly.