# GREENE *v.* UNITED STATES.

No. 84.   Argued November 21, 1963.—Decided February 17, 1964.

*Eugene Gressman* argued the cause for petitioner. With him on the briefs was *George Kaufmann.*

*J. William Doolittle* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Douglas, Louis F. Claiborne, Alan S. Rosenthal* and *Kathryn H. Baldwin.*

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

Petitioner, the prevailing party in *Greene* v. *McElroy,* 360 U. S. 474, comes to this Court for a second time. Prior to April 23, 1953, petitioner was employed by a private corporation producing mechanical and electrical parts for military agencies of the United States. On that date the corporation discharged him because of the revocation of his security clearance by the Department of the Navy. Following his challenge of this revocation, this Court held in 1959 in *Greene* v. *McElroy, supra,* that "in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." *Id.,* at 508. On remand the District Court, declaring that revocation of petitioner's security clearance was "not validly authorized," ordered that all rulings denying petitioner's security clearance be

"expunged from all records of the Government of the United States." [1]

In the interim between the security revocation and the District Court order, petitioner had found it necessary to take less remunerative nonsecurity employment. [2] When, after the prolonged litigation, he obtained judicial relief in 1959, his current employment did not require and he did not seek access authorization. He then sought only to recover compensation for the unauthorized govern-

---

[1] The text of the District Court order, dated December 14, 1959, is as follows:

"Upon the decision of the United States Supreme Court in this case (*Greene* v. *McElroy*, 360 U. S. 474) and the copy of the judgment and opinion of the Supreme Court heretofore filed with the clerk of this Court; and

"It appearing that counsel for the respective parties have consented hereto, it is hereby

"ORDERED that the action of the Secretary of Defense and his subordinates in finally revoking plaintiff's security clearance was and the same is hereby declared to be not validly authorized; and it is further

"ORDERED that any or all rulings, orders, or determinations wherein or whereby plaintiff's security clearance was revoked are hereby annulled and expunged from all records of the Government of the United States."

[2] In the prior litigation this Court noted that the Court of Appeals had concluded:

"We have no doubt that Greene has in fact been injured. He was forced out of a job that paid him $18,000 per year. He has since been reduced, so far as this record shows, to working as an architectural draftsman at a salary of some $4,400 per year. Further, as an aeronautical engineer of considerable experience he says (without real contradiction) that he is effectively barred from pursuit of many aspects of his profession, given the current dependence of most phases of the aircraft industry on Defense Department contracts not only for production but for research and development work as well. . . . Nor do we doubt that, following the Government's action, some stigma, in greater or less degree, has attached to Greene." 360 U. S. 474, 491, n. 21, quoting 103 U. S. App. D. C. 87, 95–96, 254 F. 2d 944, 952–953.

mental action, and to that end, shortly after entry of the court order, formally requested the Department of Defense to provide monetary restitution for his loss of earnings. Petitioner based his claim on a 1955 Department of Defense regulation providing that where there has been "a final determination . . . favorable to a contractor employee," the employee will be reimbursed "in an equitable amount for any loss of earnings during the interim resulting directly from a suspension of clearance." [3] The Department of Defense refused to grant restitution under this 1955 regulation but offered to consider petitioner's claim under a 1960 regulation [4]

---

[3] The pertinent regulation is Paragraph 26, Department of Defense Directive 5220.6, 20 Fed. Reg. 1553, dated February 2, 1955:

*"Monetary Restitution.* In cases where a final determination is favorable to a contractor employee, the department whose activity originally forwarded the case to the Director will reimburse the contractor employee in an equitable amount for any loss of earnings during the interim resulting directly from a suspension of clearance. Such amount shall not exceed the difference between the amount the contractor employee would have earned at the rate he was receiving on the date of suspension and the amount of his interim net earnings. No contractor employee shall be compensated for any increase in his loss of earnings caused by his voluntary action in unduly delaying the processing of his case under this part."

[4] The July 28, 1960, regulation (Department of Defense Directive 5220.6, 25 Fed. Reg. 7523), issued pursuant to an Executive Order of February 20, 1960 (Exec. Order No. 10865, 25 Fed. Reg. 1583), contains the following provision for "monetary restitution":

"If an applicant suffers a loss of earnings resulting directly from a suspension, revocation, or denial of his access authorization, and at a later time a final administrative determination is made that the granting to him of an access authorization at least equivalent to that which was suspended, revoked or denied, would be clearly consistent with the national interest and it is determined by the board making a final favorable determination that the administrative determination which resulted in the loss of earnings was unjustified, reimbursement of such loss of earnings may be allowed in an amount which shall not exceed the difference between the amount the applicant would have

issued after the claim had arisen and had been formally asserted. Pursuant to the terms of the new regulation, the Department indicated that, as a condition of monetary restitution, it would be necessary to have an administrative determination that he "would be" currently entitled to a security clearance. Petitioner thereupon instituted the present action in the Court of Claims to obtain restitution under the terms of the 1955 regulation and the Fifth Amendment to the Constitution of the United States. The Court of Claims refused to pass on the merits of petitioner's claim and, applying the doctrine of exhaustion of administrative remedies, ordered proceedings "suspended pending pursuit of administrative remedies [made available] by the Department of Defense."[5] For the reasons stated below, we hold that petitioner is entitled to restitution under the 1955 regulation and that, under the circumstances, it was error to remit petitioner to further administrative proceedings under the 1960 regulation.

## I.

The facts comprising the background of the present action are fully set forth in *Greene* v. *McElroy, supra,* at 476–491, and need only brief restatement here. Petitioner, an aeronautical engineer, was serving as vice president and general manager of Engineering and Research Corporation (ERCO), a private firm producing mechani-

---

earned at the rate he was receiving on the date of suspension, revocation, or denial of his access authorization and the amount of his interim net earnings."

[5] The order declared that: "In view of the action this day by the court in *Stephen L. Kreznar* v. *The United States,* No. 47–60, and *Novera Herbert Spector* v. *The United States,* No. 48–60, further proceedings herein are hereby suspended pending pursuit of administrative remedies [made available] by the Department of Defense." The cases cited are now pending in this Court on petition for a writ of certiorari, No. 85, this Term.

cal and electrical parts for various agencies of the United States Armed Services. Petitioner had been employed by ERCO in 1937 and, except for a brief leave of absence, had continued with the firm. In connection with this employment, which involved classified work for the Armed Forces, he had obtained security clearances.[6] Indeed, before the revocation of his security clearance, the Industrial Employment Review Board, on January 29, 1952, had reversed the action of an inferior board and granted petitioner clearance for secret governmental contract work.

On April 17, 1953, however, the Secretary of the Navy notified ERCO that petitioner's "continued access to Navy classified security information [was] inconsistent with the best interests of National Security."[7] No hearing preceded this notification. The Secretary further requested ERCO to exclude petitioner "from any part of your plants, factories or sites at which classified Navy projects are being carried out and to bar him access to all Navy classified information." ERCO had no choice but to comply with this request and so, a week later, on April 23, 1953, petitioner was discharged. Petitioner promptly asked the Navy for reconsideration. A year later he was given a "hearing" in which he was denied an opportunity to confront or cross-examine the allegedly adverse witnesses. On the basis of this proceeding the appropriate administrative boards approved the Secretary's revocation of security clearance.

---

[6] See *Greene* v. *McElroy, supra,* at 476, n. 1: "Petitioner was given a Confidential clearance by the Army on August 9, 1949, a Top Secret clearance by the Assistant Chief of Staff G–2, Military District of Washington on November 9, 1949, and a Top Secret clearance by the Air Materiel Command on February 3, 1950."

[7] At the time the Secretary acted, the administrative boards that had reviewed petitioner's earlier clearance had been abolished. See *Greene* v. *McElroy, supra,* at 480–483.

Petitioner thereupon filed a complaint in the United States District Court for the District of Columbia asking for appropriate injunctive relief and a declaration that the revocation was unlawful and void. The District Court denied relief, 150 F. Supp. 958, and the Court of Appeals affirmed, 103 U. S. App. D. C. 87, 254 F. 2d 944. Then, as noted above, on June 29, 1959, this Court, reversing the decisions below, held that "in the absence of explicit authorization from either the President or Congress the respondents were not empowered to deprive petitioner of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination." *Greene* v. *McElroy, supra,* at 508. On remand, the District Court on December 14, 1959, with the consent of the Government, entered a final order declaring: (1) "that the action of the Secretary of Defense and his subordinates in finally revoking plaintiff's security clearance was . . . not validly authorized," and (2) "that any or all rulings, orders, or determinations wherein or whereby plaintiff's security clearance was revoked are hereby annulled and expunged from all records of the Government of the United States." [8]

Following issuance of this order, petitioner initiated the administrative and legal steps immediately leading to the present action. His current employment did not require and he did not seek an opportunity to obtain current access authorization for classified information; indeed, he plainly says that he does not now "need or want" such authorization. His sole objective is to obtain compensation for the governmental action held by this Court not to have been validly authorized. On December 28, 1959, he made a formal demand of the General Counsel of the Department of the Navy "for monetary restitution from the Department of the Navy and/or the Department of

---

[8] The full text of the order is set forth in note 1, *supra.*

Defense pursuant to Section 26 of the Industrial Personnel Security Review Regulation, 20 Fed. Reg. 1553." This regulation, issued in 1955, provides as follows:

> "In cases where a final determination is favorable to a contractor employee, the department whose activity originally forwarded the case to the Director will reimburse the contractor employee in an equitable amount for any loss of earnings during the interim resulting directly from a suspension of clearance." [9]

The General Counsel of the Department of the Navy acknowledged the demand and requested that certain dates and financial data be supplied. A statement of petitioner's legal position respecting the applicability of the regulation was also requested. On April 20, 1960, he supplied the General Counsel of the Department of the Navy with the requested information and statement of legal position.[10]

While petitioner's claim was thus being processed, the Secretary of Defense on July 28, 1960, issued a new Industrial Personnel Access Authorization Review Regulation, a regulation superseding in pertinent part the 1955 regulation under which petitioner had claimed compensation.[11] The language of the new "monetary restitution" provision clearly indicates that the 1955 regulation had been significantly and substantially altered. Thus, instead of simply providing, as the earlier regulation did, that upon "a final determination . . . favorable to a contractor employee" the Government shall provide compensation for the loss of earnings, the 1960 regulation, *inter alia*,

---

[9] See note 3, *supra*.

[10] Petitioner stated that he had incurred a $49,960.41 loss of earnings from April 23, 1953, the date of his dismissal, to December 31, 1959.

[11] The text of the new provision is set forth in note 4, *supra*.

(1) subjects the claimant's recovery to administrative discretion; (2) requires that "at a later time" the claimant qualify to receive a security clearance equivalent to that originally held or sought; (3) requires that the "favorable determination" be a favorable "administrative" determination; and (4) requires that the contrary determination had been "unjustified."

On January 4, 1961, petitioner was advised that his claim had been forwarded to the Director of the Office of Security Policy of the Department of Defense for final determination. Petitioner then, in a letter addressed to the Director, reiterated his claim and stated that he was entitled to restitution under the 1955 regulation. After further communication, the Director advised petitioner that the Department of Defense was prepared to consider his case under the newly issued 1960 regulation and "to take such action as may be necessary to reach a final determination as to whether it is in the national interest to grant him an authorization for access to classified information." On March 2, 1961, petitioner again submitted a statement of his legal position concerning the applicability of the 1955 regulation and again pointed out that he had no occasion to require and, therefore, was not seeking current security clearance. He expressly declined to request consideration of his case under the 1960 regulation. The Director responded by reemphasizing the Department's "willingness to process the question of Mr. Greene's current eligibility for access authorization under the provisions of the 1960 Review Regulation."

Finally, on June 1, 1961, nearly a year and a half after this Court's decision and petitioner's request for compensation, the Deputy General Counsel of the Department of Navy advised petitioner that "[i]n accordance with Department of Defense policy, it has been determined by the Department of Defense that Mr. Greene does not qualify for monetary restitution under the provisions" of

the 1955 regulation. This conclusion was coupled with another expression of the Defense Department's willingness "to undertake the processing of his case under the July 28, 1960 Review Regulation . . . ."

Petitioner then commenced the present action in the Court of Claims, alleging that he was entitled to monetary restitution "in an amount equal to the salary or pay which he would have earned at the rate he was receiving on the date of his suspension from employment by ERCO less his earnings from other employment." Petitioner based his claim on the 1955 regulation and the Just Compensation Clause of the Fifth Amendment to the Constitution. The Government moved "to suspend proceedings in this case pending plaintiff's pursuit and completion of the administrative remedy available to him in the Department of Defense." Petitioner responded reasserting that the "July 28, 1960 Review Regulation has no application to [this] claim for monetary restitution . . ."; that his current employment did not require and that he did not seek or desire access authorization; and, therefore, that he was "not bound to exhaust any remedies under the July 28, 1960 Review Regulation before making such claim or bringing this suit." The Commissioner of the Court of Claims sustained the Government's position by ordering "further proceedings . . . suspended pending pursuit of administrative remedies [made available] by the Department of Defense." [12] The Court of Claims subsequently denied petitioner's request for review, and this Court granted certiorari, 372 U. S. 974.

## II.

Petitioner contends that his right to monetary restitution must be determined under the 1955 regulation. This

---

[12] The text of the order is set forth in note 5, *supra.*

regulation provides that governmental liability follows from "a final determination . . . favorable to a contractor employee." Petitioner concludes that this Court's decision in *Greene* v. *McElroy, supra,* and the District Court order constitute the only final and favorable determination required by the 1955 regulation. He maintains that the judicial order expunging adverse determinations reinstated in effect the security clearance of January 1952—"at least for the period between petitioner's discharge on April 23, 1953, and the expungement order of December 14, 1959." Furthermore, petitioner argues, when in *Greene* v. *McElroy* this Court held unauthorized the revocation of security clearance, an act that deprived petitioner of his job, he became entitled as a matter of right to recover damages resulting from the loss of that employment.

The Government responds that the 1960, rather than the 1955, regulation applies and that, pursuant to the 1960 regulation, petitioner must establish as a condition of recovery that he now "would be" currently entitled to a security clearance. Alternatively,[13] assuming the 1955 regulation governs, the Government contends that before restitution is allowed there must be "a further showing, at the administrative level, that the challenged revocation of access authorization was not only procedurally incorrect, but substantively wrong." Specifically, the Government states, to meet the requirements of the 1955 regulation, petitioner "must at least show that he was entitled to clearance during the period for which he claims damages by reason of the denial of clearance." Finally, the Government argues, even if the 1955 regulation is applicable, petitioner must exhaust the possi-

---

[13] Although petitioner asserts that the Government in this Court in effect concedes that the 1955 regulation must govern, we understand the Government to have framed alternative arguments rather than to have made such a concession.

bility of recovery in administrative proceedings under the 1960 regulation.

Whatever petitioner's rights are, there can be no doubt they matured and were asserted under the 1955 directive. Not until six months after petitioner formally presented his claim to the Department of Defense did the Secretary of Defense issue a new, and substantially revised, regulation concerning "monetary restitution." Thus the Government's argument necessarily requires that the 1960 regulation be given retroactive application. As the Court said in *Union Pac. R. Co.* v. *Laramie Stock Yards Co.*, 231 U. S. 190, 199, "the first rule of construction is that legislation must be considered as addressed to the future, not to the past . . . [and] a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' " [14] Since regulations of the type involved in this case are to be viewed as if they were statutes, this "first rule" of statutory construction appropriately applies and under the circumstances, it would be unjustifiable to give the 1960 regulation retroactive effect.

Our interpretation of the 1955 regulation makes it clear that petitioner has obtained the requisite final, favorable determination. In *Greene* v. *McElroy, supra*, this Court held that the Government had acted without authority in denying petitioner security clearance without providing the traditional safeguards of confrontation and cross-examination. On remand, and with the consent of the Government, the District Court entered the order voiding and expunging all determinations adverse to petitioner. As a result of the judicial action and in the absence of intervening administrative proceedings, the only legally

---

[14] See, *e. g., Claridge Apartments Co.* v. *Commissioner*, 323 U. S. 141, 164; Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn. L. Rev. 775–781 (1936).

cognizable administrative determination—for the period between petitioner's 1953 discharge and the 1959 expungement order—was the January 1952 ruling granting petitioner security clearance. Thus the final judicial order effectively reinstated the last valid administrative determination, a determination which had been substantively favorable to petitioner. By virtue of the District Court order, therefore, petitioner must be regarded as having obtained, for the period between the discharge and the judicial mandate, a "final" and "favorable" determination.

Furthermore, we read the applicable regulation as equitably designed [15] to compensate employees whose security clearance has been improperly or wrongly denied. The directive's language does not reasonably warrant the implication that a claimant, who has sustained the burden of demonstrating that the Government acted without authority in revoking his clearance without fair procedures, must take on the additional burden of showing at a later time that if he had been afforded fair procedures in the first instance he would have been able to demonstrate successfully that he was entitled to access authorization. On the contrary, the regulation should be interpreted to mean that where a claimant establishes that the Government has improperly denied clearance by its failure to provide fair procedures, the Government is liable and petitioner is entitled to recover "in an equitable amount for any loss of earnings during the interim resulting directly from a suspension of clearance." [16]

---

[15] The purpose of insuring "equity and justice" is reflected by the testimony in Hearings before the Subcommittee on Department of Defense Appropriations of the House Committee on Appropriations, 84th Cong., 1st Sess., pp. 774–781.

[16] The "interim resulting" would, we believe, in this case extend from petitioner's discharge in 1953 to issuance of the District Court order expunging the revocation of security clearance.

In a case such as the present, where the Government has acted without authority in causing the discharge of an employee without providing adequate procedural safeguards, we should be reluctant to conclude that a regulation, not explicitly so requiring, conditions restitution on a retrospective determination of the validity of the substantive reasons for the Government action—reasons which the employee was not afforded an adequate opportunity to meet or rebut at the time of his discharge. This principle is analogous to that reflected in state court decisions recognizing that "a private association's failure to afford procedural safeguards may result in the imposition of damage liability without inquiry into whether the association's action lacked substantive basis . . . ." See authorities cited in *Silver* v. *New York Stock Exchange*, 373 U. S. 341, 365, n. 18.

Having determined that petitioner was entitled to compensation under the 1955 regulation, we must consider whether it was proper, as the Government contends here and the Court of Claims held, to remit petitioner to further administrative proceedings under the 1960 regulation.

The Department of Defense, after considering petitioner's claim for nearly a year and a half following this Court's decision in *Greene* v. *McElroy, supra,* specifically determined that "Mr. Greene does not qualify for monetary restitution under the provisions" of the 1955 regulation. Petitioner's legitimate claim thus having been presented and rejected, there can be no doubt that he had exhausted the reasonable possibility of administrative proceedings under the applicable regulation. The Government argues in effect, however, that the claim could be administratively processed, and petitioner possibly could recover, under the 1960 regulation and that, by failing to resort to proceedings under the newly issued regula-

tion, petitioner thereby failed to exhaust all available administrative remedies.

The Department of Defense had clearly declared that in the course of applying the 1960 regulation, it would necessarily "process the question of Mr. Greene's current eligibility for access authorization . . . ." As we have indicated, however, petitioner, who had to find non-security employment as a result of the 1953 clearance revocation, does not now require and is not seeking current access authorization. Therefore, an administrative review of his present eligibility is wholly irrelevant to a determination of his damages under the 1955 regulation. In view of the substantial differences between the two regulations and in view of the additional factual determinations that would be relevant under the 1960 regulation but irrelevant under the 1955 regulation, we conclude the 1960 regulation does not provide a reasonable basis for reviewing petitioner's rights under the 1955 regulation. We do not suggest that a claimant, seeking damages under a former regulation, need not resort to administrative proceedings under a new regulation where the new regulation contains essentially the same substantive requirements as its predecessor. Since in this case the only available administrative procedure entailed the burden of presenting the claim under an inapplicable and substantially revised [17] regulation, that procedure must be regarded as inappropriate and inadequate and therefore need not be pursued.[18] It follows that petitioner, having exhausted administrative proceedings under the applicable 1955

---

[17] See *supra*, pp. 156–157.

[18] See, *e. g.*, *Skinner & Eddy Corp.* v. *United States*, 249 U. S. 557, 562–563; *Smith* v. *Illinois Bell Tel. Co.*, 270 U. S. 587, 591; *Township of Hillsborough* v. *Cromwell*, 326 U. S. 620, 625–626; 3 Davis, Administrative Law Treatise (1958), § 20.07; Jaffe, The Exhaustion of Administrative Remedies, 12 Buff. L. Rev. 327, 329–331 (1963).

regulation, properly resorted to the Court of Claims which Congress has invested with jurisdiction to entertain claims asserted against the United States and founded upon "any regulation of an executive department." 28 U. S. C. § 1491.

In summary, then, we hold that petitioner was entitled as a matter of right to compensation under the 1955 regulation [19] and that, when the Department of Defense rejected his claim under that regulation, he was not required to proceed administratively under the newly issued 1960 regulation. In so holding, we do not suggest that if petitioner were now seeking access to security-classified information, he would be entitled to have his clearance qualifications judged by other than current regulations. But all he seeks are damages for the Government's unauthorized action and to this much, we hold, he is certainly entitled.

Accordingly, the judgment of the Court of Claims is reversed and the case remanded to that court for a determination of the amount of restitution due petitioner.

*Reversed and remanded.*

MR. JUSTICE HARLAN, whom MR. JUSTICE WHITE joins, dissenting.

Once unraveled, this case presents a single simple issue, the answer to which is in my opinion very clear.

Whatever the Government's position earlier, it has now conceded that the petitioner's claim arises under and is to be settled in accordance with the 1955 regulation. In particular, the Government's brief states that "in light of the fact that petitioner's claim was initially filed under the 1955 regulation," the Department of Defense would

---

[19] Since we remand the cause to the Court of Claims to fix the amount of compensation, we need not and do not pass on petitioner's claim under the Just Compensation Clause of the Fifth Amendment.

not require him to show that the revocation of his clearance was substantively unjustified when ordered. Brief, page 14.

All that is left in this case, therefore, is a question concerning the proper construction of the 1955 regulation, which authorizes monetary restitution only "in cases where a final determination is favorable to a contractor employee . . . ." Department of Defense Directive 5220.6, 20 Fed. Reg. 1553, 1559. The Government's position is that the quoted language conditions restitution on "a restoration of eligibility for access to classified information." Combined with the disclaimer above, this evidently means that the Government does intend to insist that petitioner show his present eligibility for clearance but not that he show his eligibility at the time clearance was revoked. The petitioner contends that this Court's decision in 1959, 360 U. S. 474, invalidating the revocation of his clearance for procedural defects, constitutes the favorable "final determination" required under the 1955 regulation.

It is evident that most of the Court's opinion has nothing to do with this issue. There is no reason to consider whether the petitioner could properly be remitted "to further administrative proceedings under the 1960 regulation" (*ante,* p. 153), or whether the 1960 regulation provides "a reasonable basis for reviewing petitioner's rights under the 1955 regulation" (*ante,* p. 163). Nor is it necessary to consider what the Department of Defense would require were it applying the 1960 regulation. Finally, the propriety of requiring the petitioner to show his acceptability for clearance in 1953 is not in issue, since no one is seeking to impose that requirement.

On the relevant issue, both of the Court's distinct explanations for its conclusion are unsatisfying. The first explanation is that the order of the District Court which expunged all adverse determinations left the peti-

tioner's prior clearance as "the only legally cognizable administrative determination" (*ante,* pp. 160–161). Therefore, the Court concludes, the District Court's order "must" be regarded as a "final" and "favorable" determination. But the conclusion is hardly compelled by the premises. Quite obviously, the order of neither this Court nor the District Court constituted a security clearance, which one would have thought to be the kind of final, favorable determination contemplated by the regulation.[1] There is certainly no inevitable logic which compels one to regard an order wiping out previously unfavorable rulings and leaving temporarily intact an initial favorable ruling as a *final* favorable determination; with at least equal logic, the situation could be regarded as one in which there has been no final determination.

The other explanation offered by the Court is even less satisfactory. The fact that the petitioner is not interested in present clearance does not *ipso facto* make his present eligibility "wholly irrelevant to a determination of his damages under the 1955 regulation" (*ante,* p. 163). The question is what the 1955 regulation requires, and the petitioner's needs and desires have little relevance to that question, if indeed they have any relevance at all.

The nub of this case is that the 1955 regulation almost certainly was not framed with the present situation in mind. The difficulties of applying a regulation meant to apply to situations involving a limited number of procedural steps to an administrative action taken in 1953 which evoked an unfavorable judicial response in 1959 and has led to further administrative and judicial pro-

---

[1] As was pointed out in my opinion concurring in the 1959 decision, there was "nothing in the Court's opinion which suggests that petitioner must be given access to classified material." 360 U. S., at 510.

ceedings still not terminated in 1964, have not unnaturally led both sides to take positions which are not clearly justified by the regulation. It may well be that the Department of Defense should, and perhaps could, not reasonably apply the requirement of present eligibility, sensible and certainly contemplated in the ordinary situation, to this case, where the present is so far removed from the relevant past and where current eligibility is no longer an issue. On the other hand, it is by no means obvious that a procedural default in the revocation of clearance automatically entitles the petitioner to restitution. The Government's liability depends on the infliction of actual harm and not simply on the commission of an error of law.[2]

The controlling point in the present posture of these proceedings is that the petitioner has not brought himself under the governing regulation as it is now construed by the department charged with its application. Well-accepted rules governing judicial review of administrative decisions require that the courts not intervene at this stage.[3] See *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U. S. 41; *Aircraft & Diesel Equipment Corp.* v. *Hirsch*,

___

[2] *Silver* v. *New York Stock Exchange*, 373 U. S. 341, cited, *ante*, p. 162, but apparently not relied on by the Court, is, of course, far afield. That case decided that the Stock Exchange had committed acts which were violative of the antitrust laws and which were not insulated from illegality by the Securities Exchange Act. The plaintiff was suing a private defendant under the antitrust laws to recover actual damages.

[3] Since the majority holds that the petitioner was entitled to present his claim in the Court of Claims and that the claim is valid, it would be inappropriate for me to consider whether under my view of the case the proper course would have been direct dismissal for want of jurisdiction; an answer to that question would require a consideration of the petitioner's constitutional claims, not reached by the majority. See 28 U. S. C. § 1491.

331 U. S. 752, 767–768.[4]  It may be that if the petitioner followed the administrative path still open to him, he would be found entitled to all that he demands under the department's construction of the regulation.  Or it may be that in the context of actual proceedings the department would modify its interpretation of the regulation. This might obviate the need for an interpretation by this Court and would in any event give assurance that those most concerned and informed about the regulation had been afforded an opportunity to adjust the various interests involved in this case.

The Court's short-circuiting of controlling principles is needless and unwise.   I would remit the petitioner to his administrative remedy.

---

[4] Professor Davis states that "probably every court requires exhaustion [of administrative remedies] when the question presented is one within the agency's specialization and when the administrative remedy is as likely as the judicial remedy to provide the wanted relief." 3 Administrative Law 56–57.  Those conditions are met in this case.