729 F.2d 1297
 20 ERC 2140, 14 Envtl. L. Rep. 20,406
 BUCCANEER POINT ESTATES, INC., a Florida Corporation, and
James C. Dougherty, Stuart D. Marr and Lois A.
Marr, his wife, Plaintiffs-Appellants,
v.
UNITED STATES of America and State of Florida, Defendants-Appellees.
 No. 82-5921.
 United States Court of Appeals,
Eleventh Circuit.
 March 26, 1984.
 
 1
 Goodwin, Ryskamp, Welcher & Carrier, P.A., Kenneth L. Ryskamp, Miami, Fla., for plaintiffs-appellants.
 
 
 2
 Stanley Marcus, U.S. Atty., Miami, Fla., Kathleen P. Dewey, Edward J. Shawaker, Maria A. Iizuka, Dept. of Justice, Land and Nat. Resources, Washington, D.C., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before HILL and HATCHETT, Circuit Judges, and ALLGOOD*, District Judge.
 
 ALLGOOD, District Judge:
 
 5
 This appeal arises from an action to enjoin the United States from preventing the plaintiffs/appellants from completing development above the mean high tide line (hereinafter MHTL)[1] at Buccaneer Point, Key Largo, Florida, without first obtaining a permit from the United States Army Corps of Engineers ("the Corps"). The district court denied the relief prayed for and the plaintiffs appealed.
 
 
 6
 The property which is involved in this litigation is a 92-acre peninsula in Key Largo, Florida. Development of the property began in 1972. The proposed development was to consist of 200 lots suitable for single family residences. At the time that the development began, the Corps required permits for work below or seaward of the MHTL but did not exercise jurisdiction over nor require permits for work above or landward of the MHTL.
 
 
 7
 In 1973 the Corps first raised questions concerning the development of Buccaneer Point. At the Corps' request, the plaintiffs provided surveys which indicated that the sites where they were placing fill were above the MHTL and therefore not subject to the Corps permitting requirements. These surveys were found unacceptable by the Corps which notified the plaintiffs that a tide study would be made and that the Corps would determine the location of the MHTL. Having been advised by the Corps that all work on the property would be "at your own risk," plaintiffs ceased development from April, 1973 through September, 1973. In September a small amount of work was done and the Corps sent a cease and desist letter with which the plaintiffs complied.
 
 
 8
 By letter, dated March 25, 1975, the Corps informed the plaintiffs that work could resume without a permit as the property had been determined to be above the MHTL. In September, 1975, plaintiffs were informed by the Corps that under new regulations adopted pursuant to a court order [NDRC v. Callaway, 392 F.Supp. 685 (D.D.C.1975) ] a permit would be necessary for further development.
 
 
 9
 Plaintiffs did not apply for a permit, but brought this action for declaratory and injunctive relief. Plaintiffs asserted that the Corps was estopped by the March 25, 1975 letter from applying the new permitting requirements to them. Plaintiffs also argued that the "grandfather" clause was unreasonably restrictive and therefore a denial of due process, and that the retroactive application of the new regulations was manifestly unjust. The district court entered final judgment against plaintiffs on February 25, 1982 and subsequently denied a motion for rehearing. This appeal followed.
 
 
 10
 In rendering its decision, the district court noted that "[t]he chronology of governmental activities after its representatives became aware of plaintiff's intentions, leaves something to be desired," but, nevertheless, rejected the plaintiff's arguments and held for the government. While this court agrees with the district court that this case does not present a fact situation where estoppel against the government should be employed,[2] the court does feel that requiring the plaintiff to obtain a Sec. 404 permit for work above the MHTL would be a retroactive application of the Corps regulations which would result in a "manifest injustice." See, Bradley v. School Board of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964).
 
 
 11
 In a situation such as the one presented by the facts in this case, the court should balance the effects of retroactive application against the "mischief of producing a result which is contrary to statutory design or to legal and equitable principles." McDonald v. Watt, 653 F.2d 1035, 1043 (5th Cir.1981) [citations omitted]. In this case we find the balance favors the plaintiffs.
 
 
 12
 The plaintiffs were justified in relying upon the March 25, 1975 letter. Members of the public are entitled to assume that public officials will act in accordance with law. Save Our Wetlands v. U.S. Army Corps of Engineers, 549 F.2d 1021 (5th Cir.1974). Throughout the course of their dealings with the Corps, the plaintiffs acted in good faith. It is uncontested that had the plaintiffs not ceased development in 1973 in an attempt to comply fully with the Corps' regulations, the project would have been completed prior to the change in regulations and the entire project would have been "grandfathered" in. Having delayed for 18 months, plaintiffs obtained new financing and prepared to complete the project on the strength of the assertion in the March 25th letter. Reliance interests should be weighed heavily in the shaping of equitable remedies. Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973).
 
 
 13
 In balance, the environmental impact of the completion of the Buccaneer Point development must be considered. The record indicates that 80% of the development is complete. The letter of March 25, 1975 lists three requirements with which the plaintiffs' compliance was required in completing the remaining 20%. The court finds that compliance with these requirements offers satisfactory protection of environmental concerns.
 
 
 14
 It is therefore the opinion of this court that plaintiffs should not be required to obtain a Sec. 404 permit to complete the development at Buccaneer Point. Such completion will be subject to the three requirements listed in the Corps' letter of March 25, 1975.
 
 
 15
 Accordingly, the decision of the district court is REVERSED.
 
 
 
 *
 Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Also called the mean high water mark and mean high water line
 
 
 [2]
 The rule in this circuit has been firmly established: the United States is not subject to an estoppel when it acts in its sovereign capacity. Deltona Corp. v. Alexander, 682 F.2d 888 (11th Cir.1982); Hicks v. Harris, 606 F.2d 65 (5th Cir.1979). Plaintiffs urge that the Corps' actions amounted to "affirmatively misconduct" which should act to estop the government. The "affirmative misconduct" exception has not, however, been accepted by this circuit. See, Deltona, supra. This court does not find that the facts presented in this case justify adoption of this exception