**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kendall M. MAYFIELD, Defendant–Appellant.**

No. 92–8466.

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1993.

Stephanie Kearns, Federal Defender Program, Inc., Atlanta, GA, for defendant-appellant.

Robert F. Schroeder, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before HATCHETT, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

HATCHETT, Circuit Judge:

Through application of the savings clause, 1 U.S.C. § 109. we affirm the district court's ruling that rejected the appellant's challenges to his convictions on statute of limitations and overbreadth grounds.

### FACTS

Anchor Savings Bank (Anchor) hired Kendall M. Mayfield, the appellant, in April, 1985, as part of Anchor's expansion of branch locations in Georgia and Florida. Anchor decided to establish business in the area of consumer lending known as "indirect automobile financing." Anchor hired Mayfield to

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

establish an indirect automobile lending program at Anchor through soliciting clients and supervising this aspect of the bank's business.[1]

In August, 1985, Mayfield solicited Dyer & Dyer, Inc., an automobile dealership, as an Anchor client. This loan relationship between Anchor and Dyer & Dyer endured from approximately April, 1985, until July, 1987, when Anchor terminated Mayfield and discontinued Dyer & Dyer as a customer. Much of the evidence showed that although Anchor underwriters denied applications, Mayfield regularly overrode these denials and approved loans to Dyer & Dyer customers. The evidence also showed that Mayfield received money and goods from Dyer & Dyer in exchange for approved loan applications for Dyer & Dyer customers.

## PROCEDURAL HISTORY

On July 10, 1991, a federal grand jury indicted Mayfield, charging him with eight counts of bank bribery and one count of conspiracy. Count I charged Mayfield with unlawfully accepting a $2500 check on March 27, 1986, from Richard Dyer in connection with transactions and business between Dyer & Dyer, Inc. and Anchor Savings Bank, in violation of 18 U.S.C. § 215. Count II charged Mayfield with accepting a $2000 check on June 6, 1986, from Richard Dyer in connection with transactions and business of the bank, in violation of 18 U.S.C. § 215. Count III charged Mayfield with accepting an automobile on August 1, 1986, from Dyer & Dyer, Inc. in connection with transactions and business of the bank, in violation of 18 U.S.C. § 215. Counts IV through VIII charged Mayfield with bank bribery, in violation of 18 U.S.C. § 215. Count IX charged Mayfield with conspiracy to violate 18 U.S.C. § 215.

On January 16, 1992, a jury found Mayfield guilty of Counts I, II, and III, and not guilty of the remaining counts. On April 16, 1992,

the district court sentenced Mayfield to five years imprisonment.

## ISSUES

This appeal involves the following issues: (1) whether the government properly convicted Mayfield under the 1984 version of 18 U.S.C. § 215; (2) whether the applicable statute of limitations barred the government's prosecution of Mayfield under Counts I and II; (3) whether the 1984 version of 18 U.S.C. § 215 was unconstitutionally overbroad as applied to Mayfield; and (4) whether the district court erred in ruling that the prosecutor exercised preemptory strikes in a legitimate non-discriminatory fashion.

## DISCUSSION

I. Whether the district court properly convicted Mayfield under the 1984 version of 18 U.S.C. § 215.

Mayfield contends that the 1984 version of 18 U.S.C. § 215 no longer existed at the time the grand jury indicted him on July 10, 1991. Mayfield argues that the 1986 version of 18 U.S.C. § 215 and the accompanying legislative history indicates Congress's purpose in enacting section 215 to be to limit prosecution to only those individuals who acted with corrupt intent. Mayfield also argues that Congress intended for retroactive application of the requirement of corrupt intent contained in the 1986 version of section 215, yet lacking in the 1984 version.

The 1984 version of 18 U.S.C. § 215 provides in relevant part:

(a) Whoever being an officer, director, employee, or attorney of any financial institution ... except as provided by law, directly or indirectly, asks, demands, extracts, solicits, seeks, accepts, receives or agrees to receive anything of value, for himself or for any other person or entity, other than such financial institution, from any person or entity for or in connection with any trans-

---

1. An indirect automobile financing program is one in which an automobile dealership (the salesperson or finance manager) fills out a loan application for the customer and transmits such application to the bank. The underwriter at the bank reviews the financial information and rec-

ommends approval or denial of the loan. The package then goes to a loan officer, in this case, Mayfield, who has the ultimate authority to override the decision of the underwriter. The loan officer then usually communicates the decision to the dealership via telephone.

action or business of such financial institution [is in violation of this section].

The jury convicted Mayfield of Counts I, II, and III, which provide that Mayfield was a consumer loan officer with Anchor Savings Bank, and Mayfield "did unlawfully accept, receive and agree to receive a thing of value, for himself, from a person and entity for and in connection with transactions and business of the Anchor Savings Bank...."

The language of the 1984 version of section 215 is clear, and the acts charged in the indictment fall squarely within the purview of the provision's language. Section 215 does not require the government to establish corrupt purpose, but only to prove that Mayfield was an officer of Anchor and accepted a thing of value in connection with bank business.

The express "language must ordinarily be regarded as conclusive.... Unless the statutory language is ambiguous or would lead to absurd results, the plain meaning of the statute must control.... '[W]hen we find the terms of a statute unambiguous, judicial inquiry is complete.'" *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1498 (11th Cir.1991) (quoting *Burlington N.R.R. v. Oklahoma Tax Commission*, 481 U.S. 454, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987)). We need not and do not resort to an investigation of congressional intent, in light of the clear and unambiguous language of section 215.

Retroactive Application

■ Mayfield's contention that Congress intended the 1986 version of section 215 to retroactively impose a corrupt purpose element into the 1984 version of section 215 is without merit. The 1986 version of section 215 does not contain any language manifesting such retroactive intent on the part of Congress. 18 U.S.C. § 215 (1993). "[R]etroactivity is not favored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." *Bowen v.*

*Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493, 500 (1988); *See also Green v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576, 584 (1964) ("the first rule of [statutory] construction is that legislation must be considered as addressed to the future, not to the past ... and a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature").

Savings Clause

■ Both Mayfield and the government agree that Congress repealed the 1984 version of section 215 with the 1986 version. The question is whether the savings clause, 1 U.S.C. § 109, operates to preserve the government's prosecution of Mayfield pursuant to the 1984 version for acts committed prior to the effective date of the 1986 version, but indicted after such effective date.[2] Counts I, II, and III charged Mayfield with unlawful conduct occurring on or before August 1, 1986. The 1986 version of section 215 became effective on August 4, 1986.

Mayfield contends that the savings clause does not apply to the government's prosecution of Mayfield, under this court's reasoning in *United States v. Kolter,* 849 F.2d 541 (11th Cir.1988). The defendant in *Kolter* appealed his conviction for possession of a firearm when a convicted felon, contending that Congress's new definition of a "convicted felon" excluded him from the definition. Congress enacted the legislation redefining the term "convicted felon" (thereby excluding Kolter from prosecution as a "convicted felon") between the grand jury's indictment of Kolter and his trial. The government contended that the savings clause preserved the old definition of "convicted felon" which applied to the defendant, making him guilty of the underlying offense. This court stated,

---

**2.** Section 109 reads in pertinent part as follows: The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

[w]e agree with the government that section 109 applies to this case insofar as prosecutions under section 1202(a), the statute under which Kolter was convicted, are saved even though section 1202(a) has been repealed.... However, in enacting section 921(a)(20), [the definition of "convicted felon"], Congress did not repeal a statute—it changed the rule announced in *Dickerson [v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) ] which had interpreted a statute. Because section 921(a)(20) did not repeal a statute but merely changed *Dickerson*'s definition of a "convicted felon," section 109 does not save the old definition. *Cf., United States v. Brown,* 429 F.2d 566, 567–68 (5th Cir.1970) (section 109 applied when a statute repealed another statute and the repealing statute contained no provision regarding retroactivity).

*Kolter,* 849 F.2d at 544.

This case is distinguishable from *Kolter* in that this court addressed Congress's change of the definition of a term in *Kolter,* whereas in this case, we must determine the effect of Congress's 1986 repeal of the 1984 version of section 215. As a result, the reasoning in *United States v. Brown,* 429 F.2d 566 (5th Cir.1970) better serves to address this issue.

The defendant in *Brown* appealed his conviction for violating 15 U.S.C. § 902(e), claiming that Congress's repeal of section 902(e) after the commission of the offense but before his conviction rendered his conviction invalid. This court rejected Brown's contention, based on the savings clause.

[P]enalties accruing while a statute was in force may be prosecuted after its repeal, unless there is an express provision to the contrary in the repealing statute. 'We are aware of no reason, rule, or decision that requires a different conclusion as to criminal prosecution under the authority of section 109 for acts occurring prior to the repeal of the former statute where neither the former statute nor the repealing statute contain no express provision to the contrary.'

Therefore, the savings clause allows prosecution under the old statute, and the date on which the indictment was returned is not relevant to this inquiry.

*Brown,* 429 F.2d at 568 (quoting *Bowen v. United States,* 171 F.2d 533, 534 (5th Cir. 1948)).

Section 109 provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any ... liability incurred under such statute ... and such statute shall be treated as still in force for the purpose of sustaining ... prosecution for the enforcement of such ... liability." The 1986 version of section 215 does not contain any language addressing the effect of the repeal of the 1984 version. Therefore, as regards Mayfield, we hold that the 1984 version of section 215 remained in force, pursuant to the savings clause.[3] *See United States v. Wicker,* 933 F.2d 284 (5th Cir.1991) (indictment and conviction of defendant in 1990, pursuant to the 1984 version of section 215, was appropriate).

II. Whether the applicable statute of limitations barred the government's prosecution of Mayfield under Counts I and II.

Mayfield contends that the appropriate statute of limitations contains a five-year period in which the government may prosecute him for the offenses under Counts I and II occurring on or before June 6, 1986, and bars the government's prosecution of him under Counts I and II. *See* 18 U.S.C. § 1382. Mayfield reasons that the grand jury issued its indictment on July 10, 1991, more than five years after the charged acts took place. The government contends that 18 U.S.C. § 3293, which provides for a ten-year period in which the government may prosecute a person for a violation of section 215, applies to Counts I and II.

Title 18 U.S.C. § 3293 provides, in pertinent part, as follows: "No person shall be prosecuted, tried, or punished for a violation of, or a conspiracy to violate—(1) section 215 ... unless the indictment is returned or the

**3.** Mayfield presents the question whether the district court erred in refusing to instruct the jury that "corrupt intent" is an element of Counts I, II, and III. Our holding under issue I necessarily resolves this issue in favor of the government.

information is filed within ten years after the commission of the offense." Section 3293 became effective August 9, 1989, prior to the expiration of the general five-year statute of limitations applicable to Mayfield's acts under Counts I and II. Mayfield contends that section 3293 speaks only to the 1986 version of section 215.

Pursuant to the savings clause, the 1984 version of section 215 remained in force for the purpose of the government prosecuting Mayfield for his conduct charged in Counts I and II. In *De La Rama Steamship Co., Inc. v. United States,* 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422 (1952), the Supreme Court stated:

> By the general savings statute Congress did not merely save from extinction a liability incurred under the repealed statute; it saved the statute itself:

> 'and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action ... for the enforcement of such ... liability.'

*De La Rama Steamship Co.,* 344 U.S. at 389, 73 S.Ct. at 383, 97 L.Ed. at 425. Section 3293 speaks directly to violations of section 215, without any reference to either the 1984 or 1986 versions. Because the savings clause preserved the government's prosecution of Mayfield for acts in violation of the 1984 version of section 215, we hold that 18 U.S.C. § 3293 applies to the 1984 version as concerns Mayfield, and gives the government a full ten years in which to prosecute Mayfield for the conduct charged under Counts I and II.

III. Whether the 1984 version of 18 U.S.C. § 215 is unconstitutionally overbroad as applied to Mayfield.

▮ The Fifth Circuit addressed this precise issue in *United States v. Wicker,* 933 F.2d 284 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). A grand jury indicted Wicker in 1990, charging him with a violation of the 1984 version of section 215. A jury found Wicker guilty, and the district court sentenced him to three years .imprisonment. Wicker appealed, asserting that the 1984 version of section 215 was unconstitutionally overbroad "because it

could criminalize ordinary conduct done without corrupt intent." *Wicker,* 933 F.2d at 287. The Fifth Circuit rejected Wicker's argument.

A statute will survive an overbreadth challenge unless it reaches a 'substantial amount of constitutionally protected conduct.' *Village of Hoffman Estates v. Flipside,* 455 U.S. 489 [494], 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Overbreadth analysis has been used primarily to invalidate statutes affecting freedoms of expression and association protected by the First Amendment. *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Wicker makes no claim that the conduct section 215 criminalizes is protected by the First Amendment. Rather, he maintains that the former version section 215 arguably would have reached all sorts of legitimate conduct.... Such conduct could conceivably be within the bounds of the former section 215. The threat that such conduct would result in criminal prosecution, however, is insignificant when compared with the core conduct which section 215 was and is designed to prohibit. *United States v. Humble,* 714 F.Supp. 794, 797 (E.D.La.1989). 'Moreover, as the Supreme Court pointedly added in *Broadrick,* any overbreadth problems that might exist in the [former version of section 215] can "be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." ' *Id.* at 797 (quoting *Broadrick,* 413 U.S. at 615–16, 93 S.Ct. at 2917–18). We decline to find the former version of section 215 overbroad....

*Wicker,* 933 F.2d at 287–88. We agree with the reasoning of the Fifth Circuit and hold that the 1984 version of section 215 is not unconstitutionally overbroad as applied to Mayfield.

IV. Whether the district court's ruling that the prosecutor exercised peremptory strikes in a legitimate, nondiscriminatory fashion is clearly erroneous.

Mayfield's contention that the district court erred in finding that the prosecution did not engage in purposeful discrimination is without merit.

## CONCLUSION

For the reasons stated, we affirm the district court.

AFFIRM.