Bobbie **BARTLEY**, Beth Graves, Amanda High, Audrey Maher, Lesa McManigell, Nancy Mills, Nikole Ozier–Cain, and Sherry Rader, Plaintiff,

v.

**U.S. DEPARTMENT OF THE ARMY,** Illinois National Guard, Richard Austin, Paul Gebhardt, James Burgess, and David Harris, Defendant.

Case No. 01–1375.

United States District Court, C.D. Illinois.

Aug. 7, 2002.

James Moody, Cavanagh & Ohara, Springfield, IL, Ronald Triggs, Law Offices of Ronald E. Triggs, P.S., Cheyenne, WY, for Plaintiffs.

Mark Neiemeyer, Fairview Heights, IL, for Defendant U.S. Department of the Army.

Karen McKnaught, Office of the Attorney General, Springfield, IL, for Defendant Illinois National Guard, State of Illinois Department of Military Affairs, Richard Austin, Paul Gebhart, and David Harris.

James Burgess, Springfield, IL, pro se.

## ORDER

MIHM, District Judge.

This matter is before the Court on two Motions to Dismiss, one filed by Defendant, United States Department of the Army, ("Army"), and the other by Defendants, Illinois National Guard ("ING"), State of Illinois Department of Military Affairs ("IDMA"), Richard Austin ("Austin"), Paul Gebhardt ("Gebhardt"), and David Harris ("Harris").[1] For the following reasons, the Army's Motion to Dismiss

---

1. Burgess is proceeding *pro se* and has not filed a Motion to Dismiss.

is GRANTED [# 27], and the Motion to Dismiss filed by the ING, IDMA, Austin, Gebhardt, Harris are GRANTED IN PART and DENIED IN PART [# 29].

## BACKGROUND

Plaintiffs are eight women who worked, or are still working in different capacities at Camp Lincoln in Springfield, Illinois. Defendants are the Army, ING, IDMA, and the following individuals sued in their official and individual capacities: (1) former Adjutant General of the ING, Austin; (2) current Adjutant General Harris; (3) former Assistant Adjutant General Gebhardt; and (4) former Chief of Staff of the ING and IDMA, Burgess. Plaintiffs, Bobbie Bartley ("Bartley"), Amanda High ("High"), Nikole Ozier–Cain ("Ozier–Cain"), Beth Graves ("Graves"), Audrey Maher ("Maher"), Lesa McManigell ("McManigell"), Sherry Rader ("Rader"), and Nancy Mills ("Mills") bring the above-styled action against these agencies and officers seeking compensatory and punitive damages. They allege that they have suffered continuing harassment and retaliation, including rape, sodomy, unwelcome sexual advances and touching, requests for sexual favors, sexual innuendos, harassing phone calls, threats of physical harm, non-consensual sex and duress. (Compl.¶¶ 18(a)-(h).) They claim that this conduct deprived them of their rights under the constitution and laws of the United States and the State of Illinois, including their fifth and fourteenth amendment rights to equal protection, their Title VI and Title VII rights, their rights under Illinois' Human Rights Act.

Specifically, Bartley claims that these constitutional and statutory violations occurred during her service as a federal technician from October 1993 to September 1996, and thereafter when she became a member of the Active Guard Reserve ("AGR"). (Compl.¶ 3.) She alleges that the harassment and retaliation spanned her civilian and military employment. *Id.*

High, a federal employee from August 1994 to 1996 when she became a member of the AGR, alleges she suffered harassment in her technician and military employment. Prior to bringing suit in this Court, High filed administratively on Form 7279–R on December 22, 1999, under Army Regulation 600–20.[2]

Maher also alleges harassment and retaliation as a technician (January 1994 to November 1998) and member of the AGR. She filed administratively on Form 7279–R on December 27, 1999.[3]

Ozier–Cain served as a federal technician from March 26, 1995, to December 17, 1996, when she became a member of the AGR, from which she alleges constructive discharge. (Compl.¶ 9.) According to the Complaint, the harassment covered Ozier–Cain's technician and military roles. She filed a Form 7279–R on December 27, 1999.[4]

**2.** Although she filed her complaint on Form 7279–R under Army Regulation 600–20, she alleges as follows:

> That Claimant and all similarly situated past, present, and future women employees of the Illinois National Guard, including those with past and pending complaints, be consolidated into a Class Complaint under the Civilian Discrimination Complaint Processing and Adjudication regulations contained in National Guard Regulations (AR) 690–600 and (AF) 40–1614 or similar regulations allowing for a Class Complaint

> where a pattern of discrimination against women persisted throughout the ranks without regard to employment status. (High 7279–R Form p. 3.)

**3.** Maher's Form 7279–R contains the same paragraph referencing the class action sections of National Guard Regulation 690–600 as that contained in High's 7279–R. *See supra* note 2.

**4.** Ozier–Cain's Form 7279–R contains the paragraph referencing National Guard Regulation 690–600.

Lieutenant Colonel McManigell, an ING employee since September 1997, alleges sexual harassment from August 1998 to the present by Burgess, Gebhardt and other male commanders. (Compl.¶ 18(e).) As alleged, this harassment covered her state employment. *Id.* She filed a Form 7279–R on August 31, 2000.[5] She also filed a form titled "Department of Military Affairs[,] Discrimination Complaint" on October 19, 2000.

Plaintiff Graves served in the AGR from 1989 to January 1992, when she alleges constructive discharge. Prior to this suit, she filed a Form 7279–R on December 27, 1999.[6]

Similarly, Rader has served in the AGR since September 1990. (Compl.¶ 10.) She alleges harassment in her military status by Burgess and other male commanders from 1993 to the present. (Compl.¶ 18(g).) She filed a Form 7279–R on December 22, 1999.[7]

Mills was a federal employee between May 28, 1985 and 1987, at which point she became a state employee with the IDMA. She alleges to have worked at IDMA until April 1998, when she was constructively discharged. (Compl.¶ 9.)

These Plaintiffs filed a Complaint in the Central District of Illinois, Springfield Division on February 22, 2001. The case was transferred to the Peoria Division on September 13, 2001. Plaintiffs filed for class certification on January 11, 2002. After receiving a full briefing from each party, the Court denied class certification.

Motions to Dismiss were filed by the Army, ING, IDMA, Austin, Gebhardt and Harris. Plaintiffs responded and each

party has filed supplementary briefs. This Order follows.

## DISCUSSION

The Army seeks dismissal of the claims against it. In a separate pleading, ING, IDMA, Austin, Gebhardt and Harris seek dismissal as well.

### *I. Army*

Plaintiffs assert that the Army deprived them of their: (1) fifth amendment right to equal protection, (Count I); (2) rights under Title VI, 42 U.S.C. § 2000d (Count III); (3) right to work an environment free from gender-based harassment under Title VII, 42 U.S.C. § 2000e *et seq.*, (Count IV). Plaintiffs also allege that the army negligently failed to train and supervise male employees (Count VII) so as to "assure that such employees would not physically and verbally assault and assail other employees ..."

The Army makes the following arguments in support of its request for dismissal of these claims: (1) Title VI does not apply to sex discrimination; (2) Title VII is the Plaintiffs' exclusive remedy for their employment discrimination claims; (3) Plaintiffs have failed to comply with the Title VII prerequisites; (4) Plaintiffs have failed to properly serve the Army; (5) Plaintiffs fail to make any allegations against the Army; (6) the Army possesses sovereign immunity; and (7) the *Feres* doctrine bars the Plaintiffs' claims.

### *A. Title VI*

█ Plaintiffs seek relief under Title VI, 42 U.S.C.2000d, which states:

---

5. McManigell's Form 7279–R does not contain a paragraph referencing National Guard Regulation 690–600.

6. Her Form 7279–R also referenced NGR 690–600.

7. Radar's form contained a reference to 690–600.

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Because this statute does not forbid sex discrimination, Plaintiffs' Title VI claim against the Army is dismissed with prejudice. *See Grove City College v. Bell,* 687 F.2d 684, 691 (3d Cir.1982) ("Indeed, the legislative history reveals that Title IX was designed to fill the gap left by Title VI of the Civil Rights Act of 1964, which did not prohibit discrimination based on sex.")

To escape this conclusion, Plaintiffs argue that the statute's plain language "is an incomplete statement of the law in that the defendant avoids citation of National Guard Regulation (AR) 600–22 and (AF) 40–1614 which recognizes ... that '[a]ll National Guard personnel are entitled to serve in an environment free from sexual harassment.'" National Guard Regulation ("NGR") 600–22 states:

This regulation establishes policies and procedures for filing, processing, investigating, settling, and adjudicating discrimination complaints in the Army National Guard (ARNG) and Air National Guard (ANG). It implements Title VI of the Civil Rights Act of 1964, as amended, DoD Directives 1350.2, and 5500.11, Army Regulation 600–20, and Air Force Instruction 36–2706, prohibiting discrimination based on race, color, religion, gender, national origin, or reprisal.

Despite this attempt to escape the plain language of Title VI, Plaintiffs' argument would require an unnatural reading of the last sentence of NGR 600–22. It would require the reading that each statute, regulation and directive listed forbids every type of discrimination listed. This is not a necessary or even suggested reading. Rather, at least one of the other regulations listed address sex discrimination (DoD Directive 1350.2).[8] Additionally, Plaintiffs do not argue that this regulation contains a private right of action allowing them to proceed; rather, they attempt to proceed directly under Title VI. Accordingly, the Title VI claims against the Army are dismissed (Count III).

## B. Title VII as the Exclusive Remedy

■ The Army argues that to the extent Plaintiffs claim to be federal employees, Title VII is the exclusive remedy for their employment discrimination claims and, therefore, their fifth amendment equal protection and negligent failure to train/supervise claims must be dismissed. Because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," *Brown v. General Svcs. Admin.,* 425 U.S. 820, 825, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), Plaintiffs' fifth amendment equal protection claims against the Army must be dismissed, *Coe v. Nat'l. Labor Relations Bd.,* 40 F.Supp.2d 1049, 1053–54 (E.D.Wis.1999) (dismissing first, fifth and fourteenth amendment claims against NLRB because Title VII is the exclusive remedy for federal employees for employment discrimina-

---

**8.** For example, Department of Defense Directive 1350.2 states, in part, as follows:

Unlawful discrimination against persons or groups based on race, color, religion, *sex,* or national origin is contrary to good order and discipline and is counter productive to combat readiness and mission accomplish-

ment Unlawful discrimination shall not be condoned.

Department of Defense, Directive No. 1350.2(4.2), Department of Defense Military Equal Opportunity (MEO) Program (1995 & 1997 Re-issue) (emphasis added).

tion, and plaintiff failed to establish that any of his claims were independent of the employment claims); *Dodson v. U.S. Army Finance and Accounting Ctr.*, 636 F.Supp. 894, 895 (S.D.Ind.1986) ("[A] a federal employee cannot bring a claim directly under the Constitution for discrimination in employment."). Thus, to the extent Plaintiffs are federal employees, their fifth amendment equal protection claims against the Army are dismissed.

To escape this conclusion, Plaintiffs argue, without appropriate citation, that their negligent failure to train/supervise claim remains valid under the FTCA. As neither party has appropriately addressed this issue, it is waived at this point.

### C. Failure to Comply with Title VII Prerequisites

The Army argues that Plaintiffs have (1) failed to properly exhaust their Title VII administrative remedies and (2) improperly named the Army as a Defendant.

### 1. Exhaustion of Remedies

The Army argues that Plaintiffs have not properly exhausted their administrative remedies under Title VII. Specifically, it argues that because Plaintiffs sought relief through the military system, rather than the civilian system, they do not now have the right to proceed in this Court. Although neither party has cited authority on this issue, and the Court is not aware of any, it appears that the choice to proceed through the military system precludes relief under Title VII at this time.

National Guard Regulations establish a Military Discrimination Complaint System under National Guard Regulation ("NGR") 600–22, and a Civilian Discrimination Complaint System under NGR 690–600.

The Military Discrimination Complaint System, NGR 600–22, applies to "Army National Guard (ARNG) and Air National Guard (ANG) military personnel serving in and former military personnel who served in an inactive duty for training status, during annual training, in a full-time support status, and while in Active Guard Reserve (AGR) status or ADSW status under Title 32 U.S.C." NGR 600–22/ANGI 36–3. By its own terms

> [t]his regulation sets policy and explains how to file, process, investigate, and settle complaints of discrimination. It establishes a uniform Discrimination Complaint System for the Army and Air National Guard.... It implements Title VI of the Civil Rights Act of 1964, as amended (42 U.S.C.2000d); DoD Directive 1350.2; DoD Directive 5500.11, Army Regulation 600–20; and Air Force Instruction 36–2706. *This regulation does not implement Title VII of the Civil Rights Act,* as amended (42 U.S.C. 2000e–16), the Age Discrimination in Employment Act, as amended (29 U.S.C. 633a), or the Rehabilitation Act, as amended (29 U.S.C. 791); these statutes do not apply to NG military personnel.

*Id.* at 1–1 (emphasis added).

NGR 600–22 further limits its application to those claiming discrimination arising from their military status. NGR 600–22 states that those "who believe that they have been discriminated against in NG technician employment must process such complaints under NGR (AR) 690–600 [NGR (AF) 40–1614], Vol 1, The NG Civilian Discrimination Complaint System." *Id.* at 1–6(e). Thus, if an individual believes she has suffered discrimination in her technician status, as opposed to her military status, she must file under the Civilian Discrimination Complaint System.

Under this dual system, an individual who claims discrimination arising from military employment must file under NGR 600–22, whereas an individual claiming discrimination arising from technician/civilian employment must file under NGR 690–600.

This dual system is evident in NGR 600–22, section 1–7(d):

> Reprisal against an individual for having engaged in a protected Equal Opportunity activity is prohibited regardless of whether the protected activity pertained to the civilian or the military program. For, example, if a military technician files a complaint through the civilian complaint process under NGR (AR) 690–600 [ (AF) 40–1614] and subsequently perceives himself or herself to be the victim of reprisals while in a military status, he or she may file a complaint under this regulation. Conversely, a military technician who files a discrimination complaint arising out of his/her military status (weekend drill, annual training, etc.) and subsequently perceives himself/herself to be the victim of reprisal while in civilian status, may file a reprisal complaint under the provisions of NGR (AR) 690–600 [ (AF) 40–1614], Vol. 1.

NGR 600–22, 1–7(d).

Under this bifurcated system, the Military and Civilian complaint systems have different attributes. Most pertinent to the instant case, the Military Discrimination Complaint System does not provide a right to sue in a district court, whereas the Civilian Discrimination Complaint System does.

The Military Discrimination Complaint System under NGR 600–22 does not provide a right to sue. The section marked "Administrative Closure" states that "[w]hen a complaint is administratively closed or a final decision is issued, the administrative process established by this regulation is exhausted, there are no further appeals. No other processing is required except for carrying out any terms agreed upon in a resolution or directed in the final decision." *Id.* at 2–11. Furthermore, no other provision of NGR 600–22 provides for such a right.[9]

The Civilian Discrimination Complaint System, NGR 690–600 "[a]pplies to National Guard technician personnel, applicants for technician employment, and to all personnel who supervise, manage, or regulate the National Guard technician workforce." NGR (AR) 690–600. Unlike NGR 600–22, NGR 690–600 "implements Title VII of the Civil Rights Act of 1964." However, NGR 690–600 does not cover "[m]embers or former members of the National Guard alleging illegal discrimination that relates to their military status and applicants for membership in the National Guard or for duty as Active Guard Reserve . . . Such discrimination complaints are governed by NGR (AR) 600–22/NGR (AF) 30–3." Thus, like NGR 600–22, NGR 690–600 sets up a dual complaint system based on the genesis of the alleged discrimination, military or civilian.

While both National Guard regulations establish a dual complaint system, NGR 690–600, unlike 600–22, provides for review by a district court. NGR 690–600 states:

**9.** NGR 600–22 contains flow charts detailing the complaint process. There is no provision in these charts for suit in a district court. In contrast, the charts attendant to NGR 690–600 do provide for suit in district court.

Further supporting the conclusion that no right to sue exists under the Military Discrimination Complaint System, Army Regulation ("AR") 600–20, section E–1(b), which governs the military complaint process, requires the use of Form 7279–R, the same form used by Plaintiffs. Additionally, AR 600–20, like NGR 600–22, distinguishes between the military and civilian complaint systems. It states that "[c]omplaints by civilian personnel alleging discrimination should be handled in accordance with the procedures contained in AR 690–600, or as described in DoD and Department of the Army policy implementing 10 U.S.Code 1561, or as provided for in any applicable collective bargaining agreement." AR 600–20, E–1.

The avenue of redress available under the Civilian Discrimination Complaint System (figure 1) is summarized below. When processing of a complaint is delayed or when NGB or the State National Guard fail to issue the required notices, the complainant has, depending on the circumstances, the right to request a hearing or to file an appeal or a civil action in court.

NGR 690–600(6).

Based on this evaluation, it is clear that NGR 600–22 and 690–600 create a dual complaint system which turns on the source of the alleged discrimination. If the discrimination arises from an individual's civilian/technician employment, filing under 690–600 is appropriate. If the discrimination arises from an individual's military employment, the Military Discrimination Complaint System is the proper route. This distinction, and the fact that there is no right to sue under the Military Discrimination Complaint System, mimic the law in most circuits. "Title VII and the ADEA have both been held not to apply to military or National Guard units." *Gordon v. Illinois Army National Guard,* 215 F.3d 1329, 2000 WL 286091, *4 (7th Cir. March 9, 2000). Thus, the absence of a right to sue under the Military Discrimination Complaint System complies with the case law.

■ Here, because Plaintiffs sought relief under the Military Discrimination Complaint System, they are barred from proceeding under Title VII at this time. Bartley, High, Ozier–Cain and Maher have alleged harassment and retaliation arising from their federal civilian and military employment and each filed under the Military Discrimination Complaint System on Form 7279–R. Similarly, Graves and Rader have complained of harassment and retaliation arising from their military employment and filed under the Military Discrimination Complaint System, Form 7279–R.

Each one received a "MEMORANDUM FOR The State Equal Employment Manager, Illinois Department of Military Affairs" stating in part:

Based on the NGB's review, dismissal of the complaint is proper and is dismissed in accordance with paragraph 2–5c, NGR (AR) 600–22/NGR (AF) 30–3. This decision completes the administrative process of this case and there are no provisions for further appeal.

Based on the above discussion, which is further supported by this paragraph, Plaintiffs choice to file under the Military Discrimination Complaint System (NGR 600–22) now precludes their Title VII claims in this Court.

It is notable that prior to a final decision from the National Guard Bureau ("NGB"), these Plaintiffs were notified of their right to file under the Civilian Discrimination Complaint System. On March 23, 2000, seven months after Bartley filed her 600–22 complaint and three months after High, Ozier–Cain and Maher filed their 600–22 complaints, LTC Wayne Carlson ("LTC Carlson") sent Plaintiff's attorney, James P. Moody ("Moody"), a letter, stating in pertinent part:

Reference the military discrimination complaints which you filed for the following personnel on the dates indicated:

1. SGT Bobbi Bartley—September 16, 1999;

2. SSG Amanda High—December 22, 1999;

3. SFC Sherry Rader—December 22, 1999;

4. SGT Audrey Maher—December 27, 1999

5. SGT Nicole Ozier—December 27, 1999; and

6. 2LT Beth Graves—December 27, 1999.

As you have been advised, the above complaints were forwarded to the Inspector General for review in accordance with applicable military regulations. The National Guard Bureau has now referred these complaints back the Department of Military Affairs for processing, and we would like to expedite this process.

Therefore, please advise as to whether the above complaints should be processed as military discrimination complaints, as filed, under the provisions of NGR (AR) 600–22/NGR (AF) 30–3. It appears the complaints have been properly filed, but if any incidents occurred which the complainants were in a technician status, those incidents may be refiled as technician complaints under the provisions of NGR (AR) 690–600/GNR (AF) 40–1614. If you intend to refile any issues under the technician processing system, please do so as soon as possible using the attached NGB Form 713–5, Formal Complaint of Discrimination. Capt Hess has coordinated with NGB–EO, and "Informal" processing by an EEOC Counselor will not be required unless you request it. In either case, whether the issues are processed using military or technician procedures, we will process them based on the dates of receipt as noted above.

(LTC Carlson Ltr. to Moody, March 24, 2000.)

In response to this letter, Mr. Moody alleges that he telephoned Ms. Betty Pasely ("Pasely"), Chief of Complaints Management Division of the NGB, and requested that Plaintiffs' complaints be processed under the military and technician complaint systems "in their present form as there was a continuing violation." According to Mr. Moody, Pasely "could cite no regulations governing the proper procedures for handling complaints for a continuing violation which covers both the military and technician statuses." In contrast to Mr. Moody's representations, Pasely, in her sworn declaration, stated:

> At no time did Mr. Moody request that his clients' complaints be processed under both the military and technician complaint systems in their present form. At no time did I tell Mr. Moody that his clients' complaints would be processed under both the military and technician complaint systems in their present form. Even if Mr. Moody had made such a request, governing regulations would not permit granting this request.

(Pasely Decl. ¶ 2.)

Aside from Mr. Moody's alleged conversation with Pasely, LTC Carlson sent Mr. Moody another letter on September 28, 2000, stating:

> Reference my March 24, 2000 letter concerning the military discrimination complaints of SGT Bobbi Bartley, SSG Amanda High, SFC Sherry Rader, SGT Audrey Maher, SGT Nicole Ozier, and 2LT Beth Graves. That letter was written to ensure the complainants were given the opportunity to file technician complaints on any issues which should properly be processed under technician procedures, and to expedite the processing of both military and technician issues.
>
> However, since more than six months have passed, we believe it is necessary to process the complaints *as received,* and we have coordinated this approach with the National Guard Bureau. In this regard, NGB–EO agrees we should process the above complaints, in their entirety, under the military discrimination complaint procedures. The Human Resources Office, through Lt. Col. Brinner, will process the complaints, and you will be advised as soon as possible as to which issues have been accepted or dismissed.

From our telephone conversation today, I understand you agree that the above military discrimination complaints should be processed without waiting for technician complaints to be filed. However, as we also discussed, if any of the above complainants do file complaints under the technician complaints system, those issues will be processed upon receipt in accordance with technician procedures.

(LTC Carlson Ltr. to Moody, Sept. 28, 2000) (emphasis added.) Thus, in addition to the bifurcated system set out in the regulations, Mr. Moody was notified of this system and notified that to file under the Civilian Discrimination Complaint System, the filing of a separate form was required. The record establishes that this was never done.

In sum, the choice made by Bartley, High, Rader, Maher, Ozier–Cain, and Graves (or their attorney), to file under the Military Discrimination Complaint System precludes their ability to proceed under Title VII, as they have failed to exhaust their administrative remedies.

Plaintiffs make several arguments to escape this conclusion. They first argue that LTC Carlson's September 28, 2000, letter "indicates that the military itself elected to process the complaints under the Military Discrimination Complaint Procedure and [that] this was not an election made by any of the complainants, but rather by the Department of the Army and Air Force of the Illinois National Army and Air National Guards." [10] (Plaintiffs' Supp. Brief pp. 1–2.) This argument contradicts the language of LTC Carlson's letter, which clearly states that the complaints would be processed "as received," i.e. as Plaintiffs filed them. Because Plaintiffs filed their complaints on Form 7279–R which clearly

states at the top that it implements AR 600–22, which establishes the Military Discrimination Complaint System, they were processed as such.

Plaintiffs next argue that the Court should invalidate the Military Discrimination Complaint System because it "has placed these plaintiffs in an intolerable Catch–22 by insisting that they file under the military auspices, and then asserting that under the military auspices, there is no right to sue, as part of the remedy." (Plaintiff's Supp. Brief Apr. 17, 2002, p. 2.) Plaintiffs provide no authority in justification of their request. In addition, the Military Discrimination Complaint System does not completely deny Plaintiffs access to this Court. Rather, it denies access for Title VII claims arising from military employment, which as stated above complies with the applicable case law.

Plaintiffs also argue that LTC Carlson's September 28, 2000, letter mischaracterizes Mr. Moody's intent. "Mr. Moody did not object to the processing of the complaints in their present form as he stated to Ms. Pasely; however, he did not intend to somehow waive the remedies under Title VII merely because a separate form was not filed (NGB FORM 713–5)." Mr. Moody's alleged intent to file under Title VII is supported by the fact that each Plaintiffs' Form 7279–R references NGR 690–600 when making class action allegations. Despite this evidence of the Plaintiffs' intent, the record establishes that they never filed under the Civilian Discrimination Complaint System, even after being advised of the option to do so. LTC Carlson's March 23, 2000, letter clearly states that to recover for events arising out of technician employment, Plaintiffs needed to file under NGR 690–600 on form

---

10. Plaintiffs refer to this letter as the September 9, 2000, letter. As neither Plaintiffs nor Defendants have produced such a letter, the Court assumes that this reference was a mistake, and that Plaintiffs meant to refer to the September 28, 2000, letter.

713–5, which was attached to the letter. This same letter referenced both NGR 600–22 and NGR 690–600. Thus, if the letter lacked clarity, a reading of the cited regulations would clarify that NGR 690–600, not NGR 600–22, implements Title VII and is the proper regulation for discrimination complaints arising out of technician/civilian employment.

With regard to Lisa McManigell, a state employee with the Illinois National Guard who alleges harassment in her state employment, she filed a Form 7279–R on August 31, 2000, and also filed a discrimination complaint with the Illinois Department of Military Affairs on September 5, 2000.[11]

Addressing her August 31, 2000, 7279–R complaint, Michael B. Urrutia wrote a letter on December 21, 2000, stating that McManigell's claim had been forwarded to the Directorate for Equal Opportunity, National Guard Bureau ("NGB–EO") for appropriate action. On October 25, 2001, Walter Bivens, Jr. ("Bivens"), wrote a letter stating that McManigell (1) could request an immediate final decision from the NGB, or (2) request a hearing and decision from an Equal Employment Opportunity Commission Administrative Judge. This letter went on to say that "if [McManigell] was not satisfied with the NGB final decision, [she would] have the right to appeal or to file a civil action." In response to Bivens' letter, Mr. Moody sent the NGB–EO a letter on November 20, 2001, requesting an immediate final decision in McManigell's case (No. M00181–IL–A–07–01–G).

However, on April 25, 2002, Phyllis Brantley ("Brantley") wrote a letter rescinding Bivens' letter (Case No. M–0181–IL–A–07–01–G). Brantley's letter stated that McManigell was "erroneously notified in a letter dated October 25, 2001, that [she was] entitled to a hearing by an Equal Employment Opportunity Commission Administrative Judge and had appeal rights to file civil action under Title VII." Brantley's letter "rescinded the letter dated October 25, 2001 and inform[ed McManigell of her] rights under Title VI." Finally, Brantley's letter informed McManigell of her rights under NGR 600–22.

In its March 25, 2000, submission to the Court, Plaintiffs assert that McManigell made a timely request for a right to sue letter from the NGB on November 20, 2001, "but because of the retirement of Walter Bivens, Equal Employment Analyst for NGB, such Right To Sue letter has not been received within the required sixty (60) days. It is now moot to require a Right To Sue Letter from plaintiff McManigell." Mr. Moody's November 20, 2001, letter did request an immediate final decision from the NGB. However, in contrast to Mr. Moody's representation that a right to sue letter should have been forthcoming, the next correspondence, the letter from Brantley, rescinded the right to sue and set out McManigell's options under NGR 600–22.

Perhaps McManigell's August 31, 2000, complaint filed on Form 7279–R was erroneously processed under NGR 690–600 and McManigell's request for a final decision brought this mistake to light, at which point the NGB rescinded the right to sue. While this explanation is speculative, it is clear that Plaintiffs have not provided evidence to support their assertion that

---

11. There are two notations on the face of McManigell's Department of Military Affairs complaint. One states that it was received on October 19, 2000, by the Department of Human Rights. The other states that Sharon Dayton received the complaint on September 5, 2000. The ING, IDMA, Austin, Gebhardt and Harris state that it was filed on September 5, 2000.

McManigell did not receive a right to sue letter because of Bivens' retirement.

With regard to McManigell's September 5, 2000, Illinois Department of Military Affairs complaint, on October 23, 2000, a form regarding this claim was filled out and signed by Thomas Garber. This form was on Illinois Department of Human Rights stationery (Control No. 01M1019) and a box with the following statement was checked:

> OTHER: Based upon the information recently provided it appears that Ms. McManigell performs services for Respondent as part of her military obligation and not because of an employment relationship. Complainant therefore fails to state a claim of employment discrimination under the Ill Human Rights Act.

On December 7, 2000, Sharon Dayton ("Dayton") wrote McManigell a letter on State of Illinois, Department of Military Affairs stationery detailing the findings of the investigation. Dayton's letter stated that McManigell had the "right to file a complaint with the Department of Human Rights and the Equal Employment Opportunity Commission." There is nothing in the record indicating McManigell's actions after receipt of this letter. Nor does the record contain a document granting McManigell the right to sue. Her failure to obtain a right to sue letter is fatal to her claim. *See Moses v. Illinois Dept. of Corrections*, 908 F.2d 975, 1990 WL 100894, *3 (7th Cir.1990) ("Similarly, if Moses really had not received a right to sue letter on his Title VII claim, no amendment could have made Moses' complaint state a claim upon which relief could be granted. Had the district court's understanding of the case been correct, the dismissal of the entire action without leave to amend would have been entirely appropriate.")

With regard to Mills, there is nothing in the record indicating that she filed under NGR 600–22, or NGR 690–600, or that she availed herself of any other administrative proceedings. In short, it does not appear that she ever attempted to exhaust her Title VII administrative remedies.

Plaintiffs attempt to escape this bar by citing to *Greene v. United States*, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). According to Plaintiffs, *Greene* stands for the proposition that "the burden of presenting the claim under inapplicable and substantially revised regulations must be regarded as inappropriate and therefore need not be pursued." Although not totally clear, *Greene*, as interpreted by Plaintiffs, relieves them from further exhaustion under Title VII, i.e., the Civilian Complaint system, because such a requirement would be inappropriate. In contrast to Plaintiffs' assertion, *Greene* does not require such a conclusion. Rather, in *Greene*, the plaintiff demanded restitution from the Army pursuant to a regulation promulgated in 1955. The government argued that in addition to exhausting his remedies under this regulation, the plaintiff also had to exhaust his remedies under a 1960 regulation. *Greene*, 376 U.S. at 162, 84 S.Ct. 615. The Supreme Court rejected this argument and held that no further exhaustion was necessary, in part, because the 1960 regulation was substantially different from the 1955 regulation and plaintiff had already exhausted his remedies under the 1955 regulation. In contrast to Plaintiffs' suggestion under *Greene*, this Court's ruling that Plaintiffs have not properly exhausted their remedies does not require that they now exhaust their remedies under a dramatically different regulation made effective after the filing of their original administrative complaints. Rather, the Civilian Discrimination Complaint System was open to Plaintiffs when they filed under the Military system. Indeed, they were advised of their options under the Civilian system. Yet, rather than properly

exhausting their remedies under the appropriate regulation, they maintained their claims under the Military Discrimination Complaint System. Thus, *Greene* does not affect this Court's conclusion.

Because none of the named Plaintiffs have properly exhausted their remedies, their Title VII claims against the Army are dismissed without prejudice (Count IV).

### D. Service of Process under Rule 4(m)

The Army argues that Plaintiffs have failed to serve the Army in compliance with Rule 4(m), which "requires defendants to be served within 120 days, although the time limit can be extended if good cause is shown or in the exercise of the court's discretion." Fed.R.Civ.P. 4(m); *Blake v. Peak Professional Health Services, Inc.*, 191 F.3d 455, 1999 WL 527927, *1 (7th Cir.2000). Here, the Complaint was filed on February 22, 2001. On February 26, 2001, a return of service was filed that appears to be an attempt to serve the Army. The front of the summons is addressed to "Senior Army Advisor-*Personal Service Only* U.S. Department of the Army 1301 N. Springfield, IL 62702." The back of the summons reflects that Phillip Cravens served William Holland on February 23, 2001. Then, on May 2, 2001, Plaintiffs filed a Motion for Default against the Army. In denying this Motion, Magistrate Judge Charles H. Evans noted that the record did not reflect proper Rule 4 service on the Army. (5/10/01 DE.) After this notation, Plaintiffs served United States Attorney Michael Morgan, on May 16, 2001, at 312 Paul Findley Federal Building, 600 E Monroe Street in Springfield, Illinois. After this, Mark Neimeyer, Assistant United States Attorney, entered his appearance on behalf of the Army.[12] According to the Army, proper service on the Secretary of the Army occurred on February 7, 2002. However, it does not appear that the record contains a return for this February 7 service.

■ To determine whether proper service has occurred under Rule 4(m), "a district court must first inquire whether a plaintiff has established good cause for failing to effect timely service." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir.1996). Upon a showing of good cause, the Court "has no choice but to extend the time for service, and the inquiry is ended." *Id.* However, if good cause does not exist, the Court has discretion to "either dismiss the action without prejudice or direct that service be effected within a specified time." *Id.* "Thus, absent a showing of good cause, a district court must still consider whether a permissive extension of time is warranted." *Id.*

Here, to satisfy the 120–day requirement of Rule 4(m), service had to occur on or about June 22, 2001. The record appears to indicate that two attempts to serve the Army were made within this time period. Neither Plaintiffs nor the Army address these attempts. Rather, the Army cites to a date that is not reflected in the Court's record. Plaintiffs, in addition to ignoring their two attempts, don't even attempt to state good cause for the alleged failure to achieve timely service on the Army. Rather than make a good faith argument under Rule 4(m) and the attendant case law, Plaintiffs accuse the Court of deciding this case on "hyper-technical regulations rather than the plain meaning of the statute or long-standing traditions of Anglo–American jurisprudence." (6/24/02 Plaintiffs' Supp. Memo. p. 2.) Such flattery

---

12. It is notable that neither Plaintiffs nor Defendants pointed the Court to these documents.

will not persuade the Court to ignore the legal principles applicable to this case. Given Plaintiffs' incomplete arguments, and the fact that the Army received notice and ultimately proper service, the Court will not dismiss the above-styled case based on the alleged failure to comply with Rule 4(m).

### E. Federal Tort Claims Act Claims

■ The Army argues that Plaintiffs' negligent failure to supervise and train claim, brought under the FTCA, is barred by the *Feres* doctrine. Additionally, the Army asserts that plaintiffs have not satisfied the prerequisites for maintaining a claim under the FTCA.

"In Feres, the Supreme Court held that the FTCA does not create liability for 'injuries aris[ing] out of or … in the course of activity incident to military service.'" *Smith v. United States*, 196 F.3d 774, 776 (7th Cir.1999). In examining whether *Feres* bars a claim under the FTCA, the "dispositive inquiry remains whether the service member stand[s] in the type of relationship to the military at the time of his or her injury that the occurrences causing the injury arose out of activity incident to military service." *Id.* (citing *Stephenson v. Stone*, 21 F.3d 159, 162 (7th Cir.1994)). The Seventh Circuit provided insight into the application of this inquiry in *Smith*, where the plaintiff alleged that on several occasions while she was off duty her drill sergeant forced her to submit to nonconsensual intercourse. *Smith*, 196 F.3d at 776. As a result of this activity, the *Smith* plaintiff brought suit alleging that the Army negligently failed to supervise her drill sergeant. *Id.* at 775. The *Smith* Court held that the *Feres* doctrine barred the FTCA claim because allowing it to go forward would require a court to pass judgment on the Army's decisions about fundamental issues of supervision, control and discipline. *Id.* at 777–778. The *Smith* court stated:

The allegations that the Army failed to control Staff Sergeant Robinson implicate important questions about the management of military personnel by those charged with that high responsibility. The wrongs allegedly perpetrated by Staff Sergeant Robinson upon then-Private First Class Smith were made possible by his status as her military superior. Similarly, the claims that other officers failed to report [the drill sergeant's] conduct implicate serious questions about the proper conduct and readiness of military units. As we have noted earlier, *Shearer* tells us that the military nature of the relationship between the alleged tortfeasor is critical, even if the specific incidents occurred off base or while one or both parties were off duty. Here, the complaint clearly alleges that those superior to [the drill sergeant] in the chain of command failed to prevent his abusing his military authority over Ms. Smith. This sort of allegation certainly is controlled by *Feres.*

*Id.* at 777. Under *Smith*, a failure to supervise and properly train claim runs afoul of the *Feres* doctrine as a full adjudication of such claim would implicate questions of military discipline.

Under this principle, Plaintiffs' negligent failure to supervise and train claim is barred. Like the *Smith* plaintiff, Plaintiffs in the instant case allege that Burgess, and other males at Camp Lincoln, acted in a sexually inappropriate manner, including forced intercourse while off duty. Also like *Smith*, Plaintiffs allege that the Army was duty-bound to "supervise and train employees such as James Burgess and other male employees at Camp Lincoln to reasonably assure that such employees would not physically and verbally assault and assail other employees such as Plaintiffs." (Compl.¶ 72.) They further allege that the Army "failed to take the neces-

sary actions to prevent or stop such conduct in a timely manner" and as a result Plaintiffs were sexually assaulted. (Compl.¶ 74, 75.) These allegations implicate important questions regarding the management of military personnel by those charged with such responsibility. *See Smith,* 196 F.3d at 777. As such, they are barred by *Feres* (Count VII).

Because these claims are barred by *Feres,* the Court need not address whether Plaintiffs have satisfied the prerequisites to maintaining an FTCA claim.

## II. ING, IDMA, Austin, Gebhardt, & Harris

Plaintiffs assert several claims against the ING, IDMA, Austin, Gebhardt, and Harris. With regard to the ING, Plaintiffs make the following claims: (1) it violated their right to equal protection under the fifth and fourteenth amendments (Counts I & II); (2) it violated their Title VI and Title VII rights (Counts III & IV); (3) it violated their rights under the Illinois Human Rights Act (Count VI); and (4) it negligently failed to train and supervise Burgess and other males at Camp Lincoln (Count VII).

With regard to the IDMA, Plaintiffs allege the following violations: (1) fourteenth amendment equal protection (Count II); (2) Title VI and VII (Counts III & IV); (3) Illinois Human Rights Act (Count VI); and (4) negligent failure to train and supervise males at Camp Lincoln (Count VII).

Additionally, Plaintiffs allege that Austin, Gebhardt, and Harris, individually and in their official capacities, denied them their (1) fifth amendment equal protection right (Count I), (2) their fourteenth amendment equal protection right (Count V), and (3) their rights under the Illinois Human Rights Act (Count VII).

These Defendants make the following argument in support of the claims against

them: (1) Title VI does not apply to the facts of this case; (2) Plaintiffs have failed to properly exhaust their administrative remedies under Title VII; (3) the eleventh amendment bars the claims against the ING and IDMA, as well as the individually named Defendants insofar as they are sued in their official capacity; (3) because the fifth amendment does not bar discrimination by state agencies such claims against the ING must be dismissed; (4) *Feres* bars the Title VII claims against ING and IDMA; (6) Austin, Gebhardt and Harris benefit from qualified immunity; (8) sovereign immunity bars the negligent failure to supervise and train claim.

Defendants' first two arguments regarding Title VI and Title VII have been addressed in detail above. The Title VI claim against the ING and IDMA is dismissed as Title VI does not prohibit sex discrimination (Count III). *See* discussion *supra* Part.I.A. The Title VII claim against the ING and IDMA is barred because Plaintiffs have failed to properly exhaust their administrative remedies. *See* discussion *supra* Part.I.C.1. Discussion of the remaining arguments asserted by the ING, IDMA, Austin, Gebhardt and Harris follows.

### A. Eleventh Amendment

The eleventh amendment states that the " 'Judicial power of the United States shall not be construed to extend to any suit ... commenced or prosecuted against one of the ... States' by citizens of another State, ... and (as interpreted) by its own citizens." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* —— U.S. ——, ——, 122 S.Ct. 1640, 1643, 152 L.Ed.2d 806 (2002) (citations omitted). "Under the Eleventh Amendment, the States and their entities are immune from private damage actions or suits for injunctive relief brought in federal court." *Winters v. Iowa State Univ.,* 962, F.2d 11, 1992 WL 101625, *2 (7th Cir.1992).

■ However, a State may waive its eleventh amendment immunity from suit in federal court. *Harvis,* 744 F.Supp. at 827. "A State may effectuate a waiver of its constitutional immunity by a state statute or constitutional provision, or by otherwise waiving its immunity to suit in the context of a particular federal program." *Nelson v. Illinois,* 36 F.3d 684, 690 (7th Cir.1994) (overruled on other grounds in *Lapides,* —— U.S. at ——, 122 S.Ct. at 1643); *see also College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) ("[A] State may waive its sovereign immunity by consenting to suit."). Additionally, "Congress may abrogate eleventh amendment immunity under certain circumstances, provided it too does so expressly." *Harvis,* 744 F.Supp. at 828 (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)); *see also College Savings Bank,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 ("Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment ...") Because Plaintiffs seek monetary relief [13] from the ING and IDMA, instrumentalities of the State of Illinois,[14] their federal suit is barred by the eleventh amendment unless Illinois has waived, or Congress has abrogated, its immunity.

■ Plaintiffs argue that Illinois has waived its immunity by virtue of the (1) the Court of Claims Act, 705 ILCS 505/1 *et seq.;* (2) the Illinois Public Relations Act, 5 ILCS § 315/1 *et seq.;* and (3) the Illinois Human Rights Act, 775 ILCS 5/1–101 *et seq.* The " 'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.' " *College Savings Bank,* 527 U.S. 666 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (citing *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142). A State waives its sovereign immunity by making a " 'clear declaration' that it intends to submit itself to our jurisdiction[.]" *College Savings Bank,* 527 U.S. at 676, 119 S.Ct. 2219.

> Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. Nor does it consent to suit in federal court merely by stating its intention to "sue and be sued," or even by authorizing suits against it " 'in any court of competent jurisdiction[.]' " We have even held that a State may, absent any contractual commitment to the contrary, alter the conditions of its waiver and apply those changes to a pending suit.

*College Savings Bank,* 527 U.S. at 676, 119 S.Ct. 2219.

■ This test has already been found unsatisfied with regard to the Court of Claims Act, which requires the filing of tort claims against Illinois in the Court of Claims. *See Ranyard v. Bd. of Regents,* 708 F.2d 1235, 1239 (7th Cir.1983). "Limiting tort actions to the Court of Claims, however, has not been construed as a waiver ... of Eleventh Amendment immunity." *Id.* (citing *McDonald v. Illinois,* 557 F.2d 596, 600–01 (7th Cir.1977)); *see also Garrett v. Illinois,* 612 F.2d 1038, 1040 (7th Cir.1980) (holding that Illinois had not waived its amenability to suit under the Illinois Court of claims Act). Accordingly, this argument fails to establish waiver.

---

**13.** It does not appear from their Complaint that Plaintiffs seek injunctive relief.

**14.** The parties agree that the ING and IDMA qualify as arms of the State of Illinois. *See Knutson v. Wisconsin Air National Guard,* 995 F.2d 765, 767 (7th Cir.1993) ("In each state the National Guard is a state agency, under state authority and control."); 20 ILCS § 1805/20 (West 2001) ("There is hereby established in the Executive Branch of the State Government, a principal department which shall be known as the Department of Military Affairs.").

With regard to the Illinois Public Relations Act, 5 ILCS § 315/1 *et seq.* Plaintiffs have done no more than cite to the statute and claim, without authority, that it contains a waiver. Such perfunctory and undeveloped arguments are waived, especially since the Court has found nothing in the Public Relations Act that could reasonably be construed as a clear waiver of Illinois' eleventh amendment immunity.

■ With regard to the Illinois Human Rights Act ("Human Rights Act"), 775 ILCS 5/1–101 *et seq.*, Plaintiffs argue that Illinois is an employer under the Human Rights Act, which seeks "[t]o prevent sexual harassment in employment," 775 ILCS § 5/1–102(b). Plaintiffs further assert that the Human Rights Act "provides that the State may be subject to the jurisdiction of the federal courts for violations of the Human Rights Act." In support of this assertion Plaintiffs cite to 775 ILCS § 5/7–109.1, which states: "The Department may administratively close a charge pending before the Department if the issues which are the basis of the charge are being litigated in a State or federal court proceeding." This assertion borders on an attempt to deceive the Court and fails to establish a waiver. Section 5/7–109.1 simply does not qualify as a "clear declaration" of Illinois' intent to submit itself to federal jurisdiction; rather, it grants a specific power to the Department of Human Rights.

■ Having failed to establish an affirmative waiver by Illinois, Plaintiffs argue that Congress has abrogated Illinois' eleventh amendment immunity by virtue of § 1983. In support of this assertion, Plaintiffs cite *McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473 (7th Cir.1996), "in which a Title VII civil rights action was brought against the Illinois Department of Transportation who enjoyed no sovereign immunity." This argument fails on several grounds. *McKenzie* does not discuss eleventh amendment immunity or § 1983, but addresses Title VII harassment and retaliation. Although the Seventh Circuit has established that Title VII abrogates eleventh amendment immunity, *Varner v. Illinois State University*, 226 F.3d 927, 936–37 (7th Cir.2000) ("[W]e noted that this Court has already held the extension of Title VII to state employers to be a valid exercise of Congress' § 5 authority."), albeit not in *McKenzie,* this does not aid Plaintiffs whose Title VII claims have been dismissed for failure to exhaust. Additionally, Seventh Circuit authority establishes that the eleventh amendment bars § 1983 actions for money damages against a state, state agency, and state officials acting in their official capacities. *Winters,* 962 F.2d 11, 1992.WL 101625, at *2. Thus, the eleventh amendment bars Plaintiffs' § 1983 claims against the ING and IDMA.

In sum, as state entities, the ING and IDMA are immune from suit under § 1983 (Counts I & II), as well as the pendent state claims (Counts VI and VII). *See Winters,* 962 F.2d 11, 1992 WL 101625, at *2 ("The Eleventh Amendment bars not only federal claims that otherwise would be within the federal court's jurisdiction, but also pendent state-law claims.") Furthermore, Austin, Gebhardt and Harris are immune from suit insofar as they are sued in their official capacities. *See id.* (stating that state officials acting in their official capacities benefit from eleventh amendment immunity).

### B. Fifth Amendment

The ING, Austin, Gebhardt and Harris argue that Plaintiffs' fifth amendment equal protection claim must fail because it does not apply to suits against officials employed by state government.[15] Plaintiffs argue that the fifth amendment ap-

---

**15.** These Defendants also argue that the fifth amendment does not prohibit unequal treat-

plies because Austin, Gebhardt, and Harris, as high-ranking officials in the ING and IDMA, are federal employees.[16]

■■■■■ The fifth amendment "Due Process Clause does contain an equal protection component applicable to the federal government." *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir.2000) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). The fourteenth amendment forbids unequal protection by state actors. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000) ("A plaintiff asserting an equal protection violation must establish that a state actor has treated him differently than persons of a different race and that the state actor did so purposefully."). Identifying the appropriate constitutional provision requires a determination of whether the ING, Austin, Gebhardt, and Harris, were acting under color of state or federal law. *See Knutson v. Wisconsin Air National Guard*, 995 F.2d 765, 766 (7th Cir.1993) (answering this question in the course of deciding whether plaintiff had a valid claim under § 1983, which presumes some form of state action).

Answering this same question, the Seventh Circuit in *Knutson* found that the Adjutant General of the Wisconsin Air National Guard acted under color of state law in terminating a member of the state militia for poor performance. *Id.* at 768. The *Knutson* Court stated:

We do not ask whether the conduct was pursuant to a state statute but "whether there is a sufficiently close nexus between the State and the challenged action[.]"

The facts here present the rather straightforward case of state officers exercising their state authority to effectuate the termination of state militia personnel. Although WIANG argues that federal law governed its conduct by virtue of the overarching scheme of federal authorization of the Guard, the fact that Wisconsin adopts and WIANG opts to utilize federal substantive and procedural rules in the exercise of its authority does not alter the state-law character of its actions. No one is claiming that the Guard had been called into service by the federal government at the time of termination. Moreover, WIANG is a part of the Wisconsin militia, with the governor serving as commander-in-chief. The Adjutant General, an appointee of the governor, effected the termination of Knutson. Slack's actions, administered at the state level, are therefore under color of state law.

*Knutson*, 995 F.2d at 767–68.

Here, neither party has addressed this essential inquiry, and it is not immediately apparent from the Complaint whether Defendants were acting under color of state or federal law.[17] The Court need not decide this question, however, because the

---

ment. This is an incomplete statement of the fifth amendment's scope. The fifth amendment "Due Process Clause does contain an equal protection component applicable to the federal government." *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir.2000) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)).

16. Plaintiffs have also stated a fifth amendment claim against the ING, based on their assertion that the ING is a hybrid state-federal agency to which the fifth amendment applies. The Court need not resolve this issue because this claim is barred whether the ING

acted under color of state or federal law. If the ING acted under color of state law to which the fourteenth amendment applies, the claim is barred by the eleventh amendment as stated above. *See* discussion *supra* Part.II.A. If the ING acted under color of federal law, Title VII is the sole remedy against the federal government for employment discrimination. *See* discussion *supra* Part.I.B.

17. The ING, IDMA, Austin, Gebhart, and Harris assume, without authority, that the individually named Defendants acted under color of state law. Plaintiffs only argument to the contrary is that the ING, Austin, Gebhart, and

ING, Austin, Gebhardt, and Harris are immune from money damages whether they arise from the fifth amendment under *Bivens* or the fourteenth amendment under § 1983.

■ The military, including officers of the National Guard, is not liable for money damages under. *Bivens* and § 1983. *See Knutson v. Wisconsin Air National Guard,* 995 F.2d 765, 770 (7th Cir.1993); *Gordon v. Illinois Army National Guard,* 215 F.3d 1329, 2000 WL 286091, *3 (7th Cir.2000) ("The *Knutson* case does not help Gordon because *Knutson* specifically held that suits for money damages against the military are precluded ..."). The Seventh Circuit crafted this rule in *Knutson,* wherein the plaintiff sued the Wisconsin Air National Guard and its Adjutant General for violating due process in terminating plaintiff as an officer in the Air Guard Reserve. *Id.* at 766–67. In determining that National Guard officers are immune to § 1983 suits for money damages, the Court relied on *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), wherein the Supreme Court held that federal military officials benefit from immunity from damages for constitutional violations brought pursuant to *Bivens, id.* at 305, 103 S.Ct. 2362. Because federal military officials have immunity from money damages in Bivens actions, and Bivens and § 1983 claims warrant similar treatment, *Butz v. Economou,* 438 U.S. 478, 500–01, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), National Guard officers must also benefit from such immunity under § 1983. *Knutson,* 995 F.2d at 770.

■ Because the military and National Guard officers are immune from money damages under § 1983 and *Bivens,* and Plaintiffs seek only compensatory and punitive damages, the ING, Austin, Gebhardt and Harris, are immune from damages whether they arise from § 1983 or *Bivens. See id.* The fact that several of the Plaintiffs performed civilian functions does not change this determination. Not only does *Knutson* focus on the defendant's position as a National Guard officer, *see Gordon v. Illinois Army National Guard,* 215 F.3d 1329, 2000 WL 286091, *3 (7th Cir.2000) ("The *Knutson* case does not help Gordon because *Knutson* specifically held that suits for money damages against the military are precluded ..."), but most of the Plaintiffs seek relief for incidents arising solely from their military status, or for incidents arising from their position as federal technicians, a job involving inextricably intertwined civilian and military functions. Additionally, the concerns underlying *Knutson* apply to the claims against Austin, Gebhardt and Harris, i.e., violations of the fifth and fourteenth amendments (Counts 1 & V). The Court will elaborate on each of these two conclusions with regard to each Plaintiff.

Because six of the Plaintiffs, Radar, Graves, Ozier–Cain, Bartley, Maher and High, seek relief for incidents arising from their military status, or for incidents arising from their position as federal technicians, their claims fall within the penumbra of *Knutson.* As stated above, *Knutson* held that Wisconsin Air National Guard's Adjutant general was immune from money damages under § 1983, wherein the plaintiff claimed unlawful termination from his position in the AGR. Thus, the *Knutson* claims arose from plaintiff's military ser-

Harris acted under color of federal law because the ING receives funds from and is the reserve force for the U.S. The later argument was rejected in *Knutson,* wherein the court rejected the assertion that federal law governed by virtue of the overarching federal scheme of authorization for the Guard and the utilization of federal substantive and procedural rules. *Knutson,* 995 F.2d at 767.

vice. Similarly, Plaintiffs, Radar, Graves, Ozier–Cain, Bartley, Maher and High, seek relief for incidents arising from their military status, or their status as federal technicians, a job that inextricably intertwines civilian and military functions. Radar and Graves seek relief for incidents arising from their duties as member of the AGR. Indeed, the Complaint alleges that Radar and Graves occupied or continue to occupy military positions. (Compl.¶ 18(b), (g).) Thus, *Knutson* bars the fifth and/or fourteenth amendment claims brought by Radar and Graves against Austin, Gebhardt and Harris.

Alleging injury as federal technicians, Ozier–Cain, Bartley, Maher and High occupied or continue to occupy positions that inextricably combine civilian and military functions. As such, their claims are barred by *Knutson.* Federal technicians maintain a dual status as civilian employees and soldiers while serving in a hybrid state/federal organization. A technician is a federal employees who: (1) is employed under section 3101 of title 5 or section 709(b) of title 32; (2) is required to separately obtain and maintain membership in a state National Guard; and (3) "is assigned to a civilian position as a technician in the administration and training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces." 10 U.S.C. § 10216; 32 U.S.C. § 709(b). "A technician's duties and responsibilities often 'correspond to those of other civilian employees, yet they arise in a distinctly military context, implicating significant military concerns.' " Major Michael J. Davidson & Major Steve Walters, Neither Man Nor Beast: The National Guard Technician, Modern Day Military Minotaur, 1995 DEC Army Law. 49 (1995). Indeed, most Courts have found the technician's military and civilian parts inextricably intertwined. *See Quinonez–Cruz v. Diaz–Colon,* 129 F.3d 1252, 1997 WL 704423, *1 (1st Cir.1997) ("We specifically rejected an identical argument in *Wright,* where we held that a National Guard technician's civilian and military roles are 'inextricably intertwined.' "); *Fisher v. Peters,* 249 F.3d 433, 443 (6th Cir.2001) (addressing plaintiff's Title VII claim and stating that her position as a National Guard technician was irreducibly military in nature and upholding dismissal of claims for gender discrimination, sexual harassment and retaliation against action secretary of the United States Air Force); *Meister v. Texas Adjutant General's Dept.,* 233 F.3d 332, 338 (10th Cir.2000) (noting that *Feres* had been extended to state national guards and national guard technicians, because military is equally important in these situations); *Wright v. Park,* 5 F.3d 586, 589 (1st Cir.1993) (concluding in a § 1983 case, that "since National Guard technicians' positions are encompassed within a military organization and require the performance of work directly related to national defense, such positions are themselves military in nature"). Given the inseparable nature of a technician's civilian and military roles, the Court finds that *Knutson* bars the § 1983 and/or *Bivens* claims for monetary relief brought by Ozier–Cain, Bartley, Maher, Mills and High as technicians.[18]

---

18. It is important to note that this analysis applies only to cases brought pursuant to § 1983, as opposed to Title VII. "In Title VII cases, as opposed to 42 U.S.C. § 1983, we are required to differentiate the civilian and military positions associated with a dualstatus job. This is because Title VII specifically provides for claims against the government for civilian employees in the military departments." *Brown v. United States,* 227 F.3d 295, 299 n. 4 (5th Cir.2000) (parsing out discrimination claim as arising from civilian or military portion of technician's job in a Title VII case). Accordingly, the Court's holding is not at odds with its discussion

In addition to the fact that most of the Plaintiffs' discrimination claims arise from military service, the justifications behind *Knutson* apply to this case. The Court in *Knutson* relied on *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), in which Navy enlisted men brought suit for race discrimination against their superior officers seeking money damages and injunctive relief and alleging that "because of their minority race petitioners failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of usual severity." *Id.* at 297, 103 S.Ct. 2362. The *Chappell* Court held that "enlisted military personnel may not maintain a suit to recover damages from a superior for alleged constitutional violations." 462 U.S. at 304, 103 S.Ct. 2362. The Court relied on the unique nature of the military requiring "a hierarchical structure of discipline and obedience to command, unique to its application to the military establishment and wholly different from civilian patterns." *Id.* at 300, 103 S.Ct. 2362. It stated:

> The special status of the military has required, the Constitution contemplated, Congress has created and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel. The special need for unhesitating and decisive action by military officers an equally disciplined responses by enlisted personnel, would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command. Here, as in *Feres*, we must be "concern[ed] with the disruption of '[t]he peculiar and special relationship of the soldier to his superiors' that might result if the soldier were allowed to hale his superiors into court[.]"

*Id.* at 303–04, 103 S.Ct. 2362. These same concerns arise in considering whether Plaintiffs may maintain their claims against the ING, Austin, Gebhardt and Harris.

Here, Plaintiffs allege sexual harassment by Austin, Gebhardt and Harris in violation of the fifth and/or fourteenth amendments. Allowing claims of unequal treatment to go forth under *Bivens* and/or § 1983 would undermine the peculiar relationship of the military subordinate to his superiors. It would allow the subordinate to file a lawsuit against his/her superior every time he/she felt that actions taken against him/her amounted to harassment. This conclusion recognizes that allowing such suits to go forward would undermine the superior's control over his subordinates. This is exactly the risk relied upon by *Chappell* and *Knutson* in denying suits against the military for money damages. In addition to the allegations of rape and sexual assault, Plaintiffs allege illegal and discriminatory demotion, transfer, discharge and "denial of common considerations to women such as promotions." (Radar Form 7279–R Ex. A p. 2; Ozier-Cain Form 7270–R Ex. A p. 2; Graves Form 7279–R Ex. A p. 2; High Form 7279–R Ex. A p. 2; Maher Form 7279–R Ex. A p. 2; McManigell IDMA Compl. Form Ex. A p. 1–3.) Such matters place into direct question the manner in which the National Guard supervises and tests the qualifications of its personnel. When faced with such matters, civilian courts generally defer to the superior experience of the military. "If civilian courts are regularly open to claims challenging personnel decisions of the military services, judicial review may also undermine military discipline and decision-making or impair training programs and operational readiness." *Knutson,* 995 F.2d at 771 (dis-

regarding the bifurcated administrative dis- crimination complaint system.

cussing the impact of allowing injunctive relief against the National Guard).

Plaintiffs also claim that Austin, Gebhardt and Harris knew of the sexually hostile atmosphere at Camp Lincoln but failed to take action to stop it. Again, this claim implicates "important questions about the management of military personnel by those charged with that high responsibility." *Smith,* 196 F.3d at 777 (dismissing FTCA claim that the Army failed to properly supervise her drill sergeant, who forced sex upon plaintiff while off-duty). Additionally, the National Guard has procedures for disciplining officers who act in improper ways, including rape. *See* 20 ILCS § 1805/70 ("General courts-martial shall be convened by the Governor and such courts shall have power to ... impose a sentence of the same kind and degree as is provided by the criminal code of the State of Illinois upon conviction of the following offenses committed while the individual is in the active service of the State of Illinois: ... aggravated criminal sexual assault ..."). Allowing Plaintiff's case to go forward would undermine and disrupt these disciplinary procedures.

 Although the Court believes that these conclusions apply with equal force to McManigell and Mills whose claims arise from their state employment, as neither party has addressed the nature, i.e. civilian or military, of their employment, it would be improper to bar their fifth and/or fourteenth amendment claims under *Knutson* at this early stage. Additionally, there is some suggestion that a civilian employee may successfully sue the military or National Guard. *See Gordon,* 215 F.3d 1329, 2000 WL 286091, *4 ("[Plaintiff's] arguments, however, overlook the numerous cases in which courts have refused to apply anti-discrimination statutes to enlisted members (as opposed to mere civilian employees) of the military or National Guard units despite language in those statutes suggesting that such coverage is appropriate."). Given the failure of the parties to identify the nature of McManigell's and Mills' state employment, the Court declines to dismiss their fifth and/or fourteenth amendment claims.

In sum, the fifth and/or fourteenth amendment claims for money damages asserted by Radar, Graves, Ozier–Cain, Bartley, Maher and High against the ING, Austin, Gebhardt, and Harris are dismissed pursuant to *Knutson* (Counts I & V). The Court declines to dismiss the fifth and/or fourteenth amendment claims asserted by McManigell and Mills at this time.

### C. *Illinois Human Rights Act*

Plaintiffs assert a violation of the Illinois' Human Rights Act, 775 ILCS 5/1–101 *et seq.* against the IDMA (Count VI). "The Illinois Human Rights Commission has exclusive jurisdiction over civil rights actions brought under IHRA." *Glebocki v. Chicago,* 32 Fed. Appx. 149, 2002 WL 448419, *5 (7th Cir. March 19, 2002) (citing 775 ILCS 5/8–111(c), which states that "no court of this state shall have jurisdiction over the subject matter of an alleged civil rights violation other than set forth in the Act"). Accordingly, Plaintiff's Human Rights Act claim is dismissed for lack of jurisdiction. *See id.* (stating that because the "district court did not have jurisdiction to entertain [plaintiff's] IHRA claim in the first place, the judgment of the district court should have reflected a dismissal in part for lack of jurisdiction").

This Court is painfully aware of the fact that the rulings in this Order will end almost all of the Plaintiffs' claims in this case without a trial on the merits. That is truly unfortunate, especially given the shocking and egregious nature of many of the allegations. But neither sympathy for the Plaintiffs' position nor regret for the

foreclosure of the opportunity of the Plaintiffs to present their evidence at trial can interfere with the Court's duty to apply the law as the Court understands it to the record in the case.

Decisions earlier in this case to pursue the military option as opposed to the civilian option for processing their complaints effectively doomed most of their Title VII efforts in this Court.

## CONCLUSION

For the foregoing reasons, the Army's Motion to Dismiss is GRANTED [# 27], and the Motion filed by the ING, IDMA, Austin, Gebhardt, and Harris is GRANTED IN PART and DENIED IN PART [# 29]. As the above conclusions apply with equal force to Plaintiffs' claims against Burgess, such claims are dismissed to the extent that they have been dismissed against Austin, Gebhardt and Harris.

The Army is terminated as a party in the above-styled case as all claims asserted against it have been dismissed, namely: (1) fourteenth amendment, (Count I), *see* discussion *supra* Part.I.B; (2) Title VI (Count III), *see* discussion *supra* Part.I.A; (3) Title VII, (Count IV), *see* discussion *supra* Part.I.C; and (4) negligent failure to train/supervise, (Count VII), *see* discussion *supra* Part.I.E.

Similarly, the ING and IDMA are terminated as parties, as all claims asserted against them have been dismissed, namely: (1) denial of fourteenth amendment equal protection, (Count II), *see* discussion *supra* Part.II.B; (2) violation of Title VII, (Count IV), *see* discussion *supra* Part.I.C. and Part.II; (3) negligent failure to train/supervise, (Count VII), *see* discussion *supra* Part.II.B; (4) Plaintiffs' allegation that the ING denied them equal protection under the fifth amendment, (asserted against the ING only) (Count I), *see* discussion *supra* Part.II.A. and Part.II.B; and (5) Plaintiffs'

claim under the Illinois Human Rights Act against the IDMA only, *see* discussion *supra* Part.II.C.

With regard to the individually named Defendants, Austin, Burgess, Gebhardt, and Harris, all the claims against them are dismissed insofar as they allege violations perpetrated by Defendants' in their official capacities. *See* discussion *supra* Part.II.A. The fourteenth and fifth amendment equal protection claims asserted by Radar, Graves, Ozier–Cain, Bartley, Maher and High against Austin, Gebhardt, Burgess and Harris in their individual capacities are dismissed, (Counts I and V), *see* discussion *supra* Part.II.B. However, the fourteenth and fifth amendment equal protection claims asserted by McManigell and Mills against Austin, Gebhardt, Burgess and Harris in their individual capacities remain alive, (Counts I and V), *see* discussion *supra* Part.II.B.